Filed 2/24/21; certified for publication 3/16/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re F.P., a Person Coming Under the Juvenile Court Law. | B307313 |
| | (Los Angeles County Super. Ct. No. 20CCJP03310A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent. v. L.P., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge. Affirmed.

Jacques A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel for Plaintiff and Respondent.

Appellant Lisa P. (mother) appeals from the juvenile court's dispositional orders denying her visitation with her son Fidel (born 2005) and allowing Fidel's therapist to decide when conjoint counseling should occur.  We affirm the orders.

## BACKGROUND

### Detention and section 300 petition

On June 17, 2020, the Los Angeles County Department of Children and Family Services (the Department) received a referral alleging caretaker incapacity and physical abuse of Fidel by mother, who had telephoned the Alhambra Police Department the previous day to report that her adult son, Orien, had kidnapped Fidel.  Fidel was in Orien's home when responding officers arrived.

Fidel told the officers that he and mother had traveled from their home in Salt Lake City to California to visit Orien.  Mother and Orien had begun to argue, and Fidel became afraid and left the home.  Fidel said he was afraid of mother.  He said mother physically abused him on a regular basis by throwing things at him, punching him, and pinching him, sometimes leaving bruises.  During their recent drive from Utah to California, mother threatened to crash the car and kill herself.

Police officers spoke to mother, who appeared to be paranoid.  She said that people were following her, and that she sees U.F.O.s.  Concern regarding mother's mental health and Fidel's safety caused the officers to take Fidel into protective custody.

The Department's responding social worker spoke with Fidel, who had no visible marks or bruises at the time.  Fidel told the social worker that he and mother had moved from California to Utah approximately three years ago and had recently arrived

in California to visit his adult half-sibling Orien. Fidel said his father is deceased.

Fidel disclosed that he was afraid of mother and did not want to return to Utah with her. He said that mother hits him about once a month. Approximately three weeks ago, mother hit him on the head with a plastic bottle and kicked him on the arm, leaving a bruise. Fidel said that he also fears mother because of her mental state. Mother at times thinks she is being followed or believes she sees extraterrestrials. She often talks about killing herself. While driving with Fidel from Utah to California, mother said she wanted to crash the car.

Fidel recounted the events of the previous night. Mother and Orien began arguing, and Fidel became afraid and left Orien's home. He returned to the home before the police arrived. Fidel denied being kidnapped and reiterated that he did not feel safe with mother.

The social worker spoke with mother by telephone later that same day. Mother said Orien had been bullying her, prompting an argument between them. Fidel fled, and mother searched the neighborhood for him. She later learned that Fidel was in Orien's home. She accused Orien of manipulating Fidel and persuading him not to return with mother to Utah.

Mother said she and Fidel had come to California to visit Orien and to obtain medical marijuana to treat Fidel's ADHD. Mother reported that she suffers from depression and PTSD but was not currently taking any medication. She denied suicidal ideation or seeing aliens. She also denied physically abusing Fidel. She said she and Fidel live in a low-income housing facility in Utah and urged the social worker to contact the case manager there.

Orien told the social worker in a June 18, 2020 telephone call that mother had physically and mentally abused him as a child. He ran away from mother when he was a teenager. Orien expressed concern for Fidel, who seemed to be suffering similar abuse by mother. Orien said mother used drugs, had mental health issues, and was unstable. Mother had disclosed to him that the purpose of the trip to California was to obtain marijuana to treat Fidel's ADHD and to sell upon their return to Utah.

Orien said he had not seen mother or Fidel for nearly 10 years until they arrived unannounced at his door at 3 or 4 a.m. the other day. Mother immediately claimed to have seen aliens and to have recorded them on her tablet. Orien observed that Fidel appeared to be afraid of mother and that mother would do things to make the child flinch.

Orien said that he and mother were arguing when Fidel left the home. He and mother searched the neighborhood for Fidel, who returned to the home while mother was out. Fidel announced that he did not want to leave with mother. Orien agreed that Fidel was not safe with mother. He was willing to take Fidel into his home but acknowledged that he had a criminal history that might preclude him from doing so.

On June 18, 2020, the social worker spoke with mother's case manager in Utah. The case manager said that mother and Fidel were in a program run by an agency that assists homeless families. The case manager was unaware of any mental health or substance abuse issues with mother; however, mother had reported that Fidel is autistic and has ADHD.

4

The Department filed a Welfare and Institutions Code section 300[1] petition on Fidel's behalf, alleging under subdivisions (a) and (b), that mother's physical abuse of Fidel, including kicking him, striking him with her hands, and hitting him on the head with a plastic bottle, placed Fidel at risk of serious physical harm. The petition further alleged that mother suffers from mental and emotional problems, including paranoia and suicidal ideation; that mother threatened to kill herself by crashing the vehicle in which Fidel was a passenger; and that she was incapable of providing regular care for Fidel, placing him at risk of serious harm.

At the June 24, 2020 detention hearing, the juvenile court ordered Fidel detained from mother and accorded her monitored visitation. The court noted that the case might be subject to the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA).

**Jurisdiction and disposition**

At a July 9, 2020 progress hearing, the juvenile court reported that the court in Utah had declined jurisdiction over the case and that the matter would remain in California. On July 14, 2020, Fidel was hospitalized because of suicidal ideation.

Mother filed a walk-on request on July 31, 2020, stating she had not been provided with any visits or telephonic contact with Fidel in over a month. At the hearing to address mother's request, the juvenile court ordered the Department to report on its communications with mother and to advise mother of Fidel's recent hospitalization.

---

[1] All further statutory references are to the Welfare and Institutions Code.

In its August 2020 jurisdiction/disposition report, the Department reported that the family had multiple previous child welfare referrals in Utah and California. Several of the Utah referrals were closed when the child welfare agency could not locate the family. A 2018 Utah referral reported that Fidel was engaging in self-harming behavior and was suicidal. The California referrals were all closed as either inconclusive or unfounded.

In a July 2020 interview, Fidel told the social worker that he was hospitalized on July 14 because he was depressed and suicidal. He said he and mother had moved to Utah, California, and Colorado, where they lived in various shelters, and at times had been homeless. He said he had been diagnosed with ADHD.

Fidel confirmed that mother physically abused him by kicking him and pinching him. Mother often screamed and cursed at him and told him he was stupid. Mother also taunted him, pretending she was going to hit him and then laughing at him when he flinched. Fidel said he was afraid of mother.

Fidel further stated that mother was paranoid and believed aliens were following her. She often threatened to kill herself. While traveling with Fidel from Utah to California, mother threatened to drive their car over a cliff.

Orien told the social worker in a July 9, 2020 interview that he did not know that mother and Fidel were in California until the police pounded on his door one morning at 4 a.m. and asked whether he knew the woman who had been knocking on all of the neighbors' doors. Orien identified the woman as mother and invited her and Fidel into his home.

Orien observed mother taunting Fidel by pretending to hit him and then laughing when Fidel flinched. Orien recounted

6

that mother had abused him as a child, and that she was paranoid and believed she saw aliens.

Orien said he had an adult sister whom mother left in Mexico when the siblings were children. Mother drove to Mexico, left the sister with paternal grandmother, and later claimed the sister had been kidnapped.

The social worker spoke with adult sibling Marta, who confirmed that mother had left her in Mexico with paternal grandmother when Marta was a child. Marta said that mother had physically and mentally abused both her and Orien on a daily basis. Mother once chased Orien with a hammer and on another occasion stabbed him in the chest. Marta said she and Orien were in and out of foster care as children, and that mother's abuse worsened when they were returned to her care. She said mother had been hospitalized several times after attempting suicide. She believed mother was unstable and that Fidel was not safe in mother's care.

Fidel's caregiver told the social worker that the child was hospitalized after cutting himself and telling another child in the home that he did not want to wake up after he fell asleep. Fidel had frequent nightmares; called himself an idiot, stupid, and good for nothing; and banged his head against the wall. He was refusing all contact with mother but had telephone and FaceTime contact with Orien. Fidel said that he wanted to live with Orien, but if that were not possible, he wished to remain in his current foster home.

The social worker at the hospital where Fidel had been admitted reported that Fidel presented as depressed and fearful. He would not make eye contact with any adults. Fidel told the hospital social worker that he had been self-medicating with

marijuana since September 2019 and last used marijuana a few days before being detained from mother.  He further disclosed that he became intoxicated with cough syrup and vodka in 2019. After his release from the hospital, Fidel was receiving wraparound services, including individual therapy.

Fidel was again hospitalized on August 4, 2020, for expressing suicidal thoughts and hearing voices.  He was also observed punching himself on the head.

Fidel refused all contact with mother during multiple interviews with the social worker in July 2020.  Fidel's caregiver reported in late July that mother was making harassing phone calls, yelling at the caregiver and demanding to speak with Fidel. Although the caregiver informed mother that Fidel did not want to speak to her, mother continued to call.  Mother's phone calls were causing Fidel anxiety and stress.  Orien also reported that mother had been calling him and his wife repeatedly to blame them for the Department's involvement.

The Department recommended that Fidel be declared a dependent child, that mother be provided reunification services, including an Evidence Code section 730 evaluation, that no telephonic or in person visits occur until deemed appropriate by Fidel's therapist, and that mother and Fidel have conjoint therapy when deemed appropriate.

In a Last-Minute Information for the Court filed on August 20, 2020, the Department reported on its multiple unsuccessful efforts to contact mother in July and August.

**Adjudication hearing**

At the adjudication hearing held on August 20, 2020, the juvenile court admitted into evidence the Department's case file and heard argument by the parties.  The court then sustained the

allegations of the petition as pled and declared Fidel a dependent child.

The juvenile court found that telephonic or in person contact with mother would be detrimental to Fidel, based on his self-harming behavior and recent hospitalizations, and ordered no visitation. The court ordered reunification services for mother, including a parenting program, individual counseling to address case issues, and if recommended by Fidel's therapist, conjoint counseling. The court ordered mother to participate in either a psychiatric evaluation or an Evidence Code section 730 evaluation and to take all prescribed psychotropic medications.

This appeal followed.

## DISCUSSION

Mother contends there was insufficient evidence to support the finding that visitation would be detrimental to Fidel. Mother further contends the juvenile court improperly delegated to Fidel's therapist the decision whether to allow conjoint counseling.

## I. Visitation

After removing a child from parental custody and offering reunification services, the juvenile court must order visitation unless doing so would jeopardize the child's safety. Section 362.1, subdivision (a) states that "[i]n order to maintain ties between the parent . . . and the child, and to provide information relevant to deciding if, and when, to return a child to the custody of his or her parent . . . , any order placing a child in foster care, and ordering reunification services, shall provide . . . for visitation between the parent or guardian and the child." (§ 362.1, subd. (a) & (1)(A).) The statute further states that "[v]isitation shall be as frequent as possible, consistent with the well-being of the child;"

9

however, "[n]o visitation order shall jeopardize the safety of the child." (§ 362.1, subd. (a)(1)(A) & (B).)

If visitation is inconsistent with the well-being of the child, or would be detrimental to the child, the juvenile court has the discretion to deny such contact. (*In re Matthew C.* (2017) 9 Cal.App.5th 1090, 1101-1102.) Mother concedes that visitation can be denied or suspended upon a finding of detriment to a child's physical or emotional well-being. (*Id.* at p. 1102; *In re T.M.* (2016) 4 Cal.App.5th 1214, 1219; *In re Brittany C.* (2011) 191 Cal.App.4th 1343, 1357.) We review the juvenile court's finding that visitation would be detrimental under the substantial evidence standard. (*In re Mark L.* (2001) 94 Cal.App.4th 573, 580-581, disapproved on another ground by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)

Substantial evidence supports the juvenile court's finding that visitation with mother would be detrimental to Fidel. The record shows that mother was physically and emotionally abusive to Fidel, hitting, kicking, or pinching him on a regular basis, frequently causing bruises. She often pretended to strike Fidel and laughed at him when he flinched. Fidel's adult siblings confirmed that they, too had been abused as children while in mother's care and expressed concern for Fidel's safety. Adult sibling Marta said mother stabbed Orien in the chest and that Orien has a scar from that incident. Mother often spoke of suicide. While driving to California with Fidel as a passenger, mother threatened to drive their car over a cliff.

After Fidel was detained from mother, he had nightmares triggered by mother's abuse. He engaged in self-harming behaviors, cutting himself and banging his head against the wall. He was twice hospitalized for suicidal ideation. Fidel reiterated

10

disparaging remarks about himself that mother had made while he was in her care. He refused all contact with mother and became anxious and stressed when mother made harassing phone calls to his caregiver and insisted on speaking to Fidel.

There is no evidence that Fidel's refusal to have contact with mother was the sole factor in the juvenile court's determination concerning visitation. *In re Julie M.* (1999) 69 Cal.App.4th 41 and *In re S.H.* (2003) 111 Cal.App.4th 310, on which mother relies, are therefore inapposite.

Substantial evidence supports the juvenile court's finding that visitation would be detrimental.

## II. Conjoint counseling

Mother forfeited her challenge to the order for conjoint counseling by failing to raise any objection in the juvenile court below. (See *Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 685 [forfeiture of claim that juvenile court unlawfully delegated visitation authority to father's parole officer]; *In re Anthony P.* (1995) 39 Cal.App.4th 635, 640-642 [forfeiture of sibling visitation claim for failure to raise claim in trial court].) A "reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) Even absent such forfeiture, the record discloses no error.

A juvenile dependency court has the power to issue "all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of [a dependent] child" and to "direct any reasonable orders to the parents or guardians of [that] child." (§ 362, subds. (a) & (d).) "'The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On

11

appeal, this determination cannot be reversed absent a clear abuse of discretion.' [Citation.]" (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311.)

The juvenile court did not abuse its discretion by ordering conjoint counseling with mother and Fidel when deemed appropriate by Fidel's therapist. The record shows that Fidel became stressed and anxious when mother made harassing phone calls to his caregiver and insisted on speaking with Fidel. He engaged in self-harming behaviors and was twice hospitalized for suicidal ideation. Fidel repeatedly stated he was afraid of mother and said he wanted no contact with her. Given these circumstances, the juvenile court's decision to commence conjoint counseling once Fidel's therapist believed the child was ready to resume contact with mother was not an abuse of discretion.

Having Fidel's therapist decide when conjoint counseling would be appropriate was not, as mother contends, an unlawful delegation of judicial power. Unlike visitation, there is no statutory right to counseling. Counseling is merely a service the court may order if the court thinks it would benefit the parent and the child. (§ 361.5.) A court may properly decline to order conjoint counseling if the child's therapist believes the child is not ready for it. (*In re Andrea G.* (1990) 221 Cal.App.3d 547, 556.) The juvenile court's decision to order conjoint counseling when deemed appropriate by Fidel's therapist was not an improper delegation of judicial power.

12

## DISPOSITION

The dispositional orders concerning visitation and conjoint counseling are affirmed.


_____, J.
CHAVEZ


We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
HOFFSTADT

13

Filed 3/16/21

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re F.P., a Person Coming Under the Juvenile Court Law. | B307313 |
| | (Los Angeles County Super. Ct. No. 20CCJP03310A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| v. | |
| L.P., | |
| Defendant and Appellant. | |

THE COURT:

The opinion in the above-entitled matter filed on February 24, 2021, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

ASHMANN-GERST, Acting P. J.   CHAVEZ, J.   HOFFSTADT, J.