Filed 8/29/22 In re B.R. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re B.R. et al., Persons Coming Under the Juvenile Court Law. | C095287 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>T.C.,<br><br>Defendant and Appellant. | (Super. Ct. No. STKJVDP20160000359) |

Appellant T.C., mother of the minors, B.R-D., Y.T., L.W., and J.W. (collectively, the minors), appeals from the juvenile court's order denying C.T., maternal grandmother of the minors (grandmother), visitation with B.R-D. and Y.T. We affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

### A

### *Initial Dependency Proceedings*

B.R-D. and Y.T. (and their younger maternal half-siblings, L.W. & J.W.) were removed from mother's care in May 2020, by the San Joaquin County Human Services Agency (the Agency) following the death of their stepsibling, B.W., and the juvenile court subsequently sustained allegations under subdivisions (a), (b), (f), (g), and (j) of section 300 of the Welfare and Institutions Code,[1] regarding mother T.C. and stepfather Bi.W. (stepfather). Mother remained incarcerated pending multiple charges of child abuse, torture, and murder and there was a court order preventing contact between the children and mother.

At the May 28, 2020 detention hearing, the juvenile court ordered that the minors not be placed with any relatives and ordered the minors detained in protective custody. On September 11, 2020, grandmother completed and filed a relative information form, identifying all four minors, noting three of the minors had special needs or disabilities. Grandmother noted that the minors had not seen the maternal family in some time and requested visits and placement of the minors with family, listing two maternal aunts and the minors' adult half sibling as relatives that would assist with their care.

### B

### *Jurisdiction And Disposition*

At the February 8, 2021 contested jurisdictional hearing, the juvenile court found the allegations of the petition true and granted grandmother supervised visits with J.W. and L.W., admonishing her not to discuss the proceedings with the minors.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

The Agency's March 16, 2021 disposition report showed that the Agency remained concerned about placing the minors with relatives, more specifically with the grandmother, because they were stable in their current placements. The Agency was also concerned about a relative's potential to coerce and influence the minors, as well as their past failure to act on concerns regarding the minors in their mother's care. The Agency expressed concern that grandmother's solution to preventing the 2016 removal of the minors and the death of B.W. in the current dependency matter was to suggest that there would not have been any problems if mother had done what grandmother told her and removed B.W. from the home. The Agency surmised that grandmother's statements appeared to place blame on B.W. for mother's and stepfather's actions. The Agency was concerned that grandmother had knowledge of mother's history and did nothing to ensure the safety of all the minors in the home. The Agency also lacked confidence that grandmother would maintain boundaries and protect the subject minors from conversations with mother and other family members regarding the case. The report revealed that B.R-D. and Y.T. had not requested or mentioned wanting visits with grandmother in the last several months. When asked if they would like to visit with anyone else, both minors stated that they only wanted to visit with their siblings. In addition, the minors were currently very stable after experiencing severe trauma and the Agency was concerned that visitation with relatives would negatively affect their stability. The report showed that the recommendation was to bypass reunification services to mother and stepfather pursuant to section 361.5, subdivisions (b)(3), (b)(4), (b)(6), and (e)(1).

At the March 16, 2021 dispositional hearing, the juvenile court granted grandmother monthly visitation and continued the hearing. However, at the April 1, 2021 placement hearing, the court denied grandmother's request for visits but allowed for

letters to be exchanged through the social worker. Subsequently, a contested hearing on placement was set for grandmother.

At the May 3, 2021 contested dispositional hearing, the juvenile court ordered that reunification services not be provided to mother, stepfather, and the fathers of B.R-D. and Y.T. The court also directed minors' counsel to confer with the minors regarding visitation with grandmother. Adopting the recommended findings and orders in the Agency's disposition report, the court denied visits by the maternal grandparents with B.R-D. (16 years old) and Y.T. (12 years old) due to the ongoing criminal investigation and the Agency's concerns that grandmother may attempt to influence the minors.

C

*Placement Hearing*

On May 10, 2021, the juvenile court held a contested hearing regarding grandmother's section 388 petition for placement of the minors and heard testimony from grandmother and the social worker. On June 15, 2021, the court issued a written ruling regarding the placement of the minors. The court stated the underlying facts of the case were tragic and horrendous and led to the death of B.W. at the hands of mother and stepfather. The court found that the injuries were "extensive from head to toe over an extended period of time while the siblings were present in the home," and "[t]he surviving siblings also suffered continuous physical, verbal, and emotional abuse during this period" from mother and stepfather. The court noted that grandmother was a licensed foster care provider and previously fostered the subject minors in the 2016 dependency case, which also stemmed from significant physical abuse by mother and stepfather. The court noted that grandmother claimed to have a close relationship with the minors and visited regularly until 2019, when a disagreement with mother occurred and visits became sporadic. The court acknowledged the significant struggles of B.R-D. and Y.T. and the significant emotional and mental improvement of the minors in their

4

stable current placement and with the services put in place to process their significant trauma. The court observed that B.R-D. and Y.T. were made aware of the placement request by grandmother and wished to remain with their current caregivers indefinitely and did not wish to reside with grandmother or any other relatives. The court found that a change in placement at that time would be detrimental to the minors and that it was in their best interests to remain in the stable and nurturing environments in which they were currently placed.

## D

### *Subsequent Hearings*

At the October 15, 2021 contested periodic review hearing, the juvenile court terminated mother and stepfather Bi.W.'s parental rights as to L.W. and J.W. The court then set a hearing, as to B.R-D. and Y.T., under section 366.26 for November 2, 2021.

The Agency's November 2, 2021 status review report recommended that B.R-D. and Y.T. remain in foster care with the changed permanent plan from legal guardianship to long-term foster care. The report revealed that B.R-D.'s behavior had regressed, and the minor had begun acting out after having contact with relatives on social media. The report showed that the minor's caregivers had a system and structure in place, which resulted in the minor's behavior improving over several weeks with significant effort and reminders from the caregivers. The report showed that Y.T. continued to thrive in the foster home. The report showed that the care providers were considering providing permanency for B.R-D. and Y.T. through legal guardianship, but due to concerns that the maternal relatives were influencing B.R-D.'s negative change in behavior, they wanted to wait several months before moving forward with the legal guardianship process. The Agency reported concerns that the maternal relatives were influencing the minors and attempting to sabotage and undermine the permanent plan of legal guardianship. The Agency opined that any contact and/or visitation between minors and maternal relatives

5

was "deeply detrimental to their well-being and to their permanency." As a result, the Agency requested that the November 2, 2021, section 366.26 hearing be vacated, and the permanent plan changed from legal guardianship to long-term foster care. The Agency reported that it would continue to work with the care providers and minors toward the eventual goal of legal guardianship.

The Agency's status review report noted statements made by B.R-D. and Y.T. regarding visitation. Prior to July 2021, the minors never expressed interest in visits with grandmother or the maternal aunts. In July 2021, however, the minors both expressed being open to visits with grandmother and other relatives. In September 2021, however, B.R-D. stated that he did not want to visit with any relatives, including grandmother. Similarly, in September 2021, Y.T. also stated that he did not want to visit with anyone "other than 'maybe' his dad [father T.]." The Agency expressed concern that the July 2021 interest in seeing relatives may have been instigated by B.R-D.'s social media contact with relatives who suggested he ask for visits with them, even if that was not what he wanted for himself.

At the November 2, 2021 section 366.26 hearing, as to B.R-D. and Y.T., the Agency asked to vacate the section 366.26 portion of the hearing and changed the recommendation from legal guardianship to long-term foster care placement with a possibility of legal guardianship in the future. In addition, father T. requested visitation with Y.T. and the parties submitted on the Agency's November 2, 2021 report. The juvenile court stated that it had reviewed the report and found by clear and convincing evidence that the return of the minors would create a substantial risk of detriment to their safety, protection, physical, and emotional well-being. The court also found that the placement of the minors was appropriate and necessary, noted the change in the permanent plan to a long-term permanent living arrangement, and adopted the proposed findings and orders.

The Agency requested a finding that visits between Y.T. and mother and father T. would be detrimental to the minor. The juvenile court found it appropriate to continue to suspend visits until Y.T. determined that he was interested in visiting father T. Mother's counsel also requested visitation between grandmother, the minors' eldest sibling, Z.E., and the minors. Mother's counsel noted that B.R-D. had contact with Z.E. on social media and argued that grandmother and Z.E. were not the perpetrators of the abuse that led to the removal of the minors. The Agency objected to contact with grandmother, due to the unauthorized contact on social media and the correlating negative behaviors occurring in the foster home by B.R-D. The Agency also reminded the court that it previously found that it was not in the minors' best interest to be placed with grandmother and renewed its request not to allow visitation with her. Both minors' counsel and the Agency agreed to supervised visitation between the minors and their eldest sibling, Z.E., if the minors wanted the visits. The court noted that it had not seen any evidence of the minors' desire to visit with grandmother. The court then authorized supervised visits between the minors and Z.E. and directed Z.E. not to discuss the case with the minors. The court advised that it was not changing the no-contact recommendation as to grandmother.

Mother timely appealed the juvenile court's order denying grandmother visitation with B.R-D. and Y.T.

## DISCUSSION

Mother contends that the juvenile court erred in denying her request for visitation between the minors, B.R-D. and Y.T., and grandmother. The Agency responds that mother lacks standing to challenge this order on appeal and even if she has standing to do so, the court did not err. We agree with the Agency's latter argument.

7

# I

## *Standing*

As a preliminary matter, the Agency contends that mother lacks standing in this appeal "because the denial of visitation to [grandmother] does not interfere with [mother]'s relationship with the minors, nor does it have any effect on the rights of [mother] in this dependency proceeding." We disagree.

"Although standing to appeal is construed liberally, and doubts are resolved in its favor, only a person aggrieved by a decision may appeal. [Citations.] . . . An aggrieved person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision." (*In re K.C.* (2011) 52 Cal.4th 231, 236 (*K.C.*).)

In *K.C.*, the child was removed from the parents and placed with a prospective adoptive family. The juvenile court bypassed reunification services and set a section 366.26 hearing. The child's grandparents filed a section 388 petition, seeking placement of the child in their home. The juvenile court denied the section 388 petition, selected adoption as the permanent plan, and terminated parental rights. Father's appeal was dismissed for lack of standing, and our Supreme Court affirmed. (*K.C., supra*, 52 Cal.4th at pp. 234-235, 240.) The Supreme Court reasoned: "All parents, unless and until their parental rights are terminated, have an interest in their children's 'companionship, care, custody and management. . . .' [Citation.] This interest is a 'compelling one, ranked among the most basic of civil rights.' [Citation.] While the overarching goal of the dependency law is to safeguard the welfare of dependent children and to promote their best interests [citations], the law's first priority when dependency proceedings are commenced is to preserve family relationships, if possible. [Citation.]" (*K.C.*, at p. 236.) The court held the father did not have the standing to appeal the denial of the grandparents' section 388 petition because he did not contest the termination of his

8

parental rights and thus "relinquished the only interest in [the child] that could render him aggrieved by the juvenile court's order declining to place the child with the grandparents." (*K.C.*, at p. 238.) Because the father in *K.C.* did not argue there was any exception to the termination of parental rights, "he ha[d] no remaining, legally cognizable interest in [the child's] affairs, including his placement . . . ." (*Id.* at p. 237.)

Here, mother contends she "has standing regarding the visitation issue . . . because it is anticipated that visitation among them will lead to placement of the children in [grandmother]'s home . . . and the preservation of [m]other's parental rights." Construing standing liberally, we agree. In contrast to the father in *K.C.*, mother's parental rights with respect to B.R-D. and Y.T. have not yet been terminated. Accordingly, she continues to have a compelling interest in B.R-D.'s and Y.T.'s companionship, care, custody, and management. (See *K.C., supra*, 52 Cal.4th at p. 236.) We conclude mother has standing at the current juncture to appeal the juvenile court's order regarding her request for visitation between grandmother and the minors, B.R-D. and Y.T.

II

*Visitation Order*

We review the juvenile court's visitation order for abuse of discretion. (*In re J.N.* (2006) 138 Cal.App.4th 450, 457-459; *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.) " ' " [']The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " [Citations.]' [Citation.] The abuse of discretion standard warrants that we apply a very high degree of deference to the decision of the juvenile court. [Citation.]" (*In re J.N.*, at p. 459.)

9

In a dependency proceeding, the juvenile court asserts jurisdiction over a child who is at risk of harm and establishes a framework in which the child's parent or legal guardian may reunify with the child. (§ 202, subd. (a).) Because the purpose of the proceeding is to reunify parents and children, grandparents are not entitled to services. While visitation between the child and the parents is essential to reunification (*In re Mark L.* (2001) 94 Cal.App.4th 573, 580), visitation with grandparents is not. However, the inherent authority of the juvenile court is extensive; among the authority is the power to regulate visitation. (§ 245.5; *In re R.R.* (2010) 187 Cal.App.4th 1264, 1284.)

A grandparent does not have a right to visit a dependent child, only a statutory right to have the juvenile court consider the issue. This consideration is guided by section 361.2, subdivision (i), which provides in relevant part: "If the court has ordered removal of the child from the physical custody of the child's parents pursuant to Section 361, the court shall consider whether the family ties and best interest of the child will be served by granting visitation rights to the child's grandparents." Whether, and under what conditions, grandparental visitation occurs is within the juvenile court's discretion. If visitation is not consistent with the minor's emotional and physical well-being, the juvenile court has discretion to deny visits. (*In re T.M.* (2016) 4 Cal.App.5th 1214, 1219-1220.) The juvenile court can suspend or deny visitation with relatives whose conduct is detrimental to the minor's safety. (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 1005.)

The evidence before the juvenile court was that several months before the Agency authored the March 15, 2021 disposition report, neither B.R-D. nor Y.T. had made any requests or any other indications that they wanted to visit with grandmother. On May 3, 2021, the court directed the minors' counsel to find out how they felt about visiting with grandmother. In July 2021, the minors both expressed being open to visits with grandmother and other relatives. In September 2021, however, B.R-D. stated that he did

10

not want to visit with any relatives, including grandmother. Similarly, in September 2021, Y.T. also stated that he did not want to visit with anyone "other than 'maybe' his dad." The Agency expressed concern that the July 2021 interest in seeing relatives may have been instigated by B.R-D.'s social media contact with relatives who suggested he ask for visits with them, even if that was not what he wanted for himself. Further, the Agency's status review report showed that the minors' care providers were considering providing permanency for B.R-D. and Y.T. through legal guardianship, but due to concerns that the maternal relatives were influencing B.R-D.'s negative change in behavior, they wanted to wait several months before moving forward with the legal guardianship process. On this basis, the Agency reported concerns that the maternal relatives were influencing the minors and attempting to sabotage and undermine the permanent plan of legal guardianship. The court also noted that it had not seen any evidence of the minors' desire to visit with grandmother.

We conclude that the juvenile court complied with the statutory requirement to consider grandparental visitation and assessed the evidence in light of both of the minors' best interests in safety and stability, concluding visitation would not serve the minors' interests. The record shows the Agency was justifiably concerned that the minors had not expressed much interest in visiting grandmother, other than briefly expressing being open to visits with relatives after social media contact with relatives, which led to B.R-D.'s behavioral problems in his placement. When asked again about visitation with relatives two months later, B.R-D. and Y.T. were no longer interested in visits with grandmother. On the basis of this evidence, the court rejected mother's request for visitation between grandmother and the minors. The court did not exceed the bounds of reason in rejecting the request, particularly in light of the minors' extensive trauma and the delicate progress the minors made in their placement. We find no abuse of discretion.

11

# DISPOSITION

The orders of the juvenile court are affirmed.

/s/ _____ ,
Robie, Acting P. J.

We concur:

/s/ _____ ,
Mauro, J.

/s/ _____ ,
Renner, J.

12