Filed 10/4/16  Certified for publication 11/2/16 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re T.M., a Person Coming Under the Juvenile Court Law. | C081155 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>             Plaintiff and Respondent,<br><br>      v.<br><br>M.M.,<br><br>             Defendant and Appellant. | (Super. Ct. No. JD236589) |

Michael M. (father) appeals from the juvenile court's order denying him visitation with the minor T.M.  (Welf. & Inst. Code, §§ 300, subd. (b), 360-361.)[1]  He contends the trial court applied the wrong standard in finding that visits by father would be detrimental to the minor.  We will affirm.

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

## I. BACKGROUND

In 2011, when the minor was seven years old, his mother died and he began living with father. On October 29, 2015, an unknown reporter told social services the minor was afraid of his father, who had been punching him. The minor reported to the social worker father had been punching him "for the last five years," including "whoopings" when the minor got into trouble and "for no reason" at all. For example, one time the minor locked the keys in the car and father responded by punching him 20 times in the chest and arms and hitting him with a belt. Father got mad when the minor made errors in his homework, coughed at night, or cried because he missed his mother. When the minor was eight years old, father hit him "50 times" on his bottom with a belt, while the minor was wearing only his underwear. Father also cursed at the minor and called him names, saying he was "slow and retarded and stupid."

The minor was aware father hits his stepmother. Father was convicted of a 2012 misdemeanor domestic violence incident against stepmother. He failed to complete the batterer's treatment program that was part of his sentence.

In addition, father smoked marijuana regularly in front of the minor and slept most of the day. At one point, the minor and father were living with two men who smoked marijuana and drank alcohol daily. Other people would also come to their home and "party." The minor and father had at least once been evicted "because of all the parties."

During his interview with the social worker, the minor appeared "very nervous" about his father finding out he spoke with her, as "his body was slightly shaking and his voice was slightly trembling." The minor went to his paternal grandmother's house after school, but father arrived in the middle of the night and banged on the door, demanding the minor return home with him. The police arrived and were so concerned by father's uncooperative behavior and out-of-control anger that they handcuffed him in a police car for three to four hours. The police eventually released father and returned the minor to him. The paternal grandmother said she feared father would beat the minor for going to

2

her house, talking to the police, and talking with social services: "My grandson is in danger and his father is going to end up injuring him severely."

At school the next day, the minor said he could not take the whooping and hitting anymore. The minor began crying and refused to return to his father's home, saying, "I don't ever want to see him again in this life." According to the minor, father was furious the minor had spoken with authorities and promised to beat him after school that day because it was Friday and the start of the weekend, so any marks or bruises would be gone by the start of the next school week. The social worker placed the minor in protective custody and the minor again expressed concern his father would come get him. When the social worker suggested it would be possible to set up visits with father before the first court hearing, the minor responded he did not want to see father, saying, "Please don't make me see him." The minor's teacher said the minor appeared terrified, and she had never seen the minor upset like this before.

In November 2015, the Sacramento County Department of Health and Human Services (Department) filed a section 300 petition on behalf of the then 11-year-old minor, alleging there was substantial risk father would inflict serious physical harm on the minor under subdivision (a) and father failed to protect the minor under subdivision (b). The court ordered emergency detention.

The November 2015 jurisdiction disposition report noted the minor grew upset when the social worker explained he could visit with his father. The minor told the social worker he felt safe at his maternal uncle's home and he did not want to visit his father. The report recommended against visitation, stating it would be "detrimental" given the "extreme physical abuse" the minor suffered from father, and the minor's "extreme fear of being in the presence of father." The report recommended individual therapy for both father and the minor before attempting to reestablish the minor's relationship with father. Father told the social worker he would not participate in reunification services because he

3

did not have time and was young and "c[ould] have more kids." According to father, the minor was "going to have to change. I'm not going to change."

At the contested jurisdiction hearing on December 29, 2015, father testified the minor was lying. According to father, he only "whooped [the minor] three times in this year," and a whooping consisted of father popping his open hand on the minor's bottom 10 to 15 times. Similar to his statements in the jurisdiction report, father testified he was not willing to participate in reunification services such as counseling. He said he had no time due to a new baby "on the way," and was "doing nothing but positive and raising [his] son in the right way." Stepmother also testified the minor was lying and his grandmother coached him to say father was beating him and making him afraid. Throughout the hearing, defendant repeatedly interrupted the court and also used foul and offensive language. Defendant was ordered to appear on a charge of contempt of court in February 2016, although the record does not reflect the outcome of these allegations.[2]

The court found the minor's statements in the report credible and the testimony of father and stepmother not credible. The court sustained the petition by a preponderance of the evidence, adjudged the minor a dependent child of the court, and ordered removal of the minor from father. As recommended in the report, the court ordered no visitation by father because it was not currently appropriate: "visitation between the child and father is detrimental until said time as the progress has been made in individual counseling and the child's safety can be assured during the course of visitation in a therapeutic setting and with the conjoint counseling." Apparently referencing father's disruptive behavior during the hearing, the court noted he was unable "to control himself

---

[2] Respondent has requested that we take judicial notice of a court order regarding a motion for sanctions, dated March 9, 2016. We deferred ruling on the request for judicial notice and now deny it, without reaching the merits, on the ground that it is immaterial to our conclusion on appeal.

4

in any setting, let alone should the child be subject to his behaviors." The court set review hearing dates and reiterated therapeutic visitation and conjoint counseling could begin after both father and the minor had an opportunity for individual counseling.

Father filed a timely appeal.

## II. DISCUSSION

As courts have explained, "[v]isitation between a dependent child and his or her parents is an essential component of a reunification plan, even if actual physical custody is not the outcome of the proceedings." (*In re Mark L.* (2001) 94 Cal.App.4th 573, 580.) In addition, section 362.1, subdivision (a) explains visitation is important "[i]n order to maintain ties between the parent . . . and the child, and to provide information relevant to deciding if, and when, to return a child to the custody of his or her parent."

A disposition order granting reunification services must provide for visitation between a child and parent "as frequent as possible, consistent with the well-being of the child." (§ 362.1, subd. (a)(1)(A).) In addition, section 362.1 mandates "[n]o visitation order shall jeopardize the safety of the child." (§ 362.1, subd. (a)(1)(B).)

Father argues we should review the dispositional order terminating his visitation for abuse of discretion, in line with courts applying that standard of review. (See, e.g., *Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255; *In re Brittany C.* (2011) 191 Cal.App.4th 1343, 1356; *In re R.R.* (2010) 187 Cal.App.4th 1264, 1284.) Still, there appears to be some disagreement regarding the standard of review, as some courts have applied the substantial evidence test (see, e.g., *In re C.C.* (2009) 172 Cal.App.4th 1481, 1492; *In re Mark L., supra*, 94 Cal.App.4th at p. 577; *In re Dylan T.* (1998) 65 Cal.App.4th 765, 775), while others have applied a blended standard (see *In re Daniel C.H.* (1990) 220 Cal.App.3d 814, 837-838 [no abuse of discretion where substantial evidence supported order]). Although this discrepancy has been acknowledged (*In re Brittany C., supra,* at p. 1356), it is unclear "whether the two standards are so different in this context." (*In re D.B.* (2013) 217 Cal.App.4th 1080, 1092, fn. 7 [applying abuse of

5

discretion after trial court made detriment finding].)  Under either standard, however, we find the order was proper.

As father acknowledges, there is a split of authority over whether section 362.1 authorizes the denial of visitation only on a finding of a threat to the minor's physical safety (*In re C.C., supra*, 172 Cal.App.4th at pp. 1491-1492), or whether courts may also deny visitation based on potential harm to the minor's emotional well-being (see, e.g., *In re Mark L., supra*, 94 Cal.App.4th at p. 581).  Father contends *In re C.C.* interprets section 362.1 correctly and claims the record lacks substantial evidence that visitation with father would threaten the minor's physical safety, especially since any visitation would be monitored.  Even if, as father contends, visitation would not threaten minor's physical safety, we disagree *In re C.C.* properly interprets section 362.1.

In addition to requiring a court to deny visitation if the child's safety is at risk, the plain language of section 362.1, subdivision (a) only requires visitation as frequently as the well-being of the child allows.  Accordingly, if visitation is not consistent with the well-being of the child, the juvenile court has the discretion to deny such contact.  As courts have explained, "well-being" includes the minor's emotional and physical health. (See, e.g., *In re Brittany C., supra*, 191 Cal.App.4th at p. 1357 [emotional well-being]; *In re S.H.* (2003) 111 Cal.App.4th 310, 317, fn. 9 [well-being]; *In re Mark L., supra*, 94 Cal.App.4th at p. 581 [emotional well-being]; *In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1138 [well-being]; *In re Julie M.* (1999) 69 Cal.App.4th 41, 50 [emotional well-being]; *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1008 [emotional well-being]; *In re Luke L.* (1996) 44 Cal.App.4th 670, 679 [well-being].)

This reading of the statute is consistent with dependency law's guiding principle of the well-being of the child:  "While visitation is a key element of reunification, the court must focus on the best interests of the children 'and on the elimination of conditions which led to the juvenile court's finding that the child has suffered, or is at risk of suffering, harm specified in section 300.'  [Citation.]"  (*In re Julie M., supra*,

6

69 Cal.App.4th at p. 50; see also *In re Mark L., supra*, 94 Cal.App.4th at p. 581.)  Indeed, if, as *In re C.C.* suggests, the juvenile court lacked the power to suspend visits when continuing them would be harmful to a child's emotional well-being, the court "would be required to sit idly by while a child suffered extreme emotional damage caused by ongoing visits. . . .  Visits of that nature are hardly consistent with the well-being of the children." (*In re Brittany C., supra*, 191 Cal.App.4th at p. 1357.)  As courts have explained, "the parents' interest in the care, custody and companionship of their children is not to be maintained at the child's expense . . . ." (*In re S.H., supra*, 111 Cal.App.4th at p. 317.)  We further note that during reunification there will be subsequent hearings, and therefore ample opportunity for the juvenile court to revisit the appropriateness of visitation in light of new circumstances, including progress in individual counseling.

Here, there was substantial evidence of risk of substantial harm to the minor's well-being from visitation with father.  The minor experienced prolonged and violent abuse from father, including being repeatedly punched and hit with a belt.  The minor was extremely fearful of father, to the point that his body shook and his voice trembled when talking about his fear of his father finding out he spoke with authorities about the abuse.  The minor cried and refused to return to father's home, and pleaded with the social worker to not make him see father.  (See *In re Julie M., supra*, 69 Cal.App.4th at p. 51 [courts may consider the child's aversion to visiting an abusive parent, so long as it is not the sole factor].)  According to the minor's teacher, this was not normal behavior for the minor.

In addition, father had not yet addressed his serious anger management issues, as evidenced the night he demanded the minor return from the paternal grandmother's house, when police were so concerned by his uncooperative behavior and out-of-control anger that they handcuffed him in a police car for three to four hours.  Father did not indicate he had improved his ability to control his angry outbursts during the hearing, when he exhibited offensive and disruptive behavior.  Moreover, father did not appear to

7

recognize the harm his behavior was causing the minor; refusing to participate in reunification services because he was "raising [his] son in the right way," and testifying that he did not have time. Indeed, father indicated the minor would have to change, because he would not.

We view the court's order requiring progress in individual counseling and assurance of the minor's safety prior to allowing visitation as an effort to ensure all parties will become emotionally prepared to engage in future visits and hopefully reunite eventually. (See *In re Brittany C., supra*, 191 Cal.App.4th at p. 1357.) The court did not abuse its discretion in denying visitation.

### III.  DISPOSITION

The judgment is affirmed.

/S/

RENNER, J.

We concur:

/S/

NICHOLSON, Acting P. J.

/S/

DUARTE, J.

8

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re T.M., a Person Coming Under the Juvenile Court Law. | C081155 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | (Super. Ct. No. JD236589) |
| Plaintiff and Respondent, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| v. | |
| M.M., | [NO CHANGE IN JUDGMENT] |
| Defendant and Appellant. | |

THE COURT:

The opinion in the above-entitled matter filed October 4, 2016, was not certified for publication in the Official Reports. For good cause it appears now that the opinion should be published in the Official Reports and it is so ordered. There is no change in judgment.

APPEAL from a judgment of the Superior Court of Sacramento County, Natalie S. Lindsey, Juvenile Court Referee.  Affirmed.

Thomas W. Casa, under appointment by the Court of Appeal, for Defendant and Appellant.

Robyn Truitt Drivon, County Counsel, and Lilly C. Frawley, Deputy County Counsel, for Plaintiff and Respondent.

BY THE COURT:

/S/

_____

NICHOLSON, Acting P. J.

/S/

_____

DUARTE, J.

/S/

_____

RENNER, J.