Filed 5/3/22  In re Kevin H. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
## SECOND APPELLATE DISTRICT
## DIVISION THREE

| | |
|---|---|
| In re Kevin H., a Person Coming Under the Juvenile Court Law. | B314292 |
| _____ | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 20CCJP00440) |
| Plaintiff and Respondent, | |
| v. | |
| KEVIN H., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Steff R. Padilla, Commissioner.  Affirmed.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel and Melania Vartanian, Deputy County Counsel for Plaintiff and Respondent.

————————————

Kevin H. (father) appeals from a juvenile court's custody order giving him monitored visits once a week with his son, Kevin Jr. (Kevin), contending that the juvenile court should have ordered monitored visits three times a week. Finding no abuse of discretion, we affirm the order.

## BACKGROUND

I. The family's history of domestic violence, detention, and petition

The family consists of mother, father, and their son, Kevin (born February 2017). Mother and father have a history of domestic violence. In April 2018, father hit mother during an argument about his infidelity. Mother reported to the police that father had a gun and hit her.

In October 2018, father was driving with mother and Kevin. Father and mother argued, and father began pulling mother's hair and punching her face. Father slowed the car while on a freeway on-ramp, and when mother opened the door to get out, father pushed her, causing her to fall. Father sped off with Kevin. An officer saw swelling and bruises on mother's face and scrapes on her knees and elbows. An investigation was opened as a result of the incident and closed as substantiated for general neglect as to father.

In February 2019, mother hit father, causing a one-inch laceration to his lip.

In November 2019, the Los Angeles County Department of Children and Family Services (DCFS) received a report that mother had hit father on the head with a dog leash in Kevin's presence. A few days later, father went to mother's home, broke down the door, threw mother to the ground, and hit her. Mother

2

told the police that father had a gun during the incident. Officers saw bruising and swelling to mother's lip and arm. A neighbor reported that law enforcement had been at the home three times in one week around Thanksgiving and that mother and father constantly screamed and hit each other. The neighbor could hear the fighting and Kevin crying and screaming at them to stop.

In January 2020, DCFS filed a petition under Welfare and Institutions Code[1] section 300 alleging that father and mother had a history of violent altercations in their son's presence, placing him at risk of serious physical harm (§ 300, subd. (a); count a-1) and constituting a failure to protect (§ 300, subd. (b); count b-1). The juvenile court detained Kevin and removed him from father. Although Kevin was initially removed from mother's home and placed with an uncle, Kevin was released back to mother. Father was ordered not to go to mother's home or to have contact with her. DCFS was ordered to give father referrals for domestic violence counseling, anger management, and individual counseling. Father was allowed monitored visits three times a week for two hours each visit.

II.    March to October 2020:  Jurisdiction and disposition report and hearing

The jurisdiction and disposition hearing was continued from March 2020, primarily due to COVID-19, to October 23, 2020. Throughout that time, Kevin remained in mother's care and was doing well.

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

DCFS also submitted reports during that time. According to a DCFS report dated March 2020, father admitted that his and mother's emotions got the better of them, and he took responsibility for his actions. However, he also denied having ever placed his hands on mother, having a gun, and that mother had ever hit him. Mother also minimized or denied the domestic violence with father, saying they had exaggerated what had happened. Still, she had ended their relationship and wanted to coparent Kevin with father.

Father visited Kevin in February 2020 but, as of June 2020, had not visited again. Father did not respond to the social worker's attempts to contact him and was not participating in services. Father finally met with the social worker in August 2020, saying he had been ill and staying away from everyone due to the pandemic. He still had not enrolled in services because he believed that his case was only opened because a neighbor disliked mother and not because of domestic violence. He described his relationship with mother as just being " 'petty' " and denied that they ever fought. Father refused to have monitored visits with Kevin, preferring to wait until the case was over. Father maintained that he had never hurt his son and was not a bad father.

At the jurisdiction and disposition hearing in October 2020, the juvenile court sustained count a-1 of the petition, dismissed count b-1, removed Kevin from father under section 361, subdivision (c), and ordered family maintenance and enhancement services for father. Father was allowed monitored visits. Kevin remained placed with mother.

4

III.    June 2021 review period and hearing

During this period of review, Kevin continued to do well in mother's care.  Mother reported having little contact with father, who in turn had little contact with Kevin.  The social worker had trouble contacting father but did talk to him in December 2020 about how to use the resources packet she'd given him.  In January 2021, father told the social worker that he'd identified one service provider but offered no details.  After the social worker tried multiple times to contact father, he finally responded and told her he had enrolled in a parenting class in May 2021.

A contested review hearing under section 364 was held on June 2, 2021.  At the hearing, father's counsel asked for joint legal custody and represented that father had enrolled in a domestic violence program.  Counsel further explained that father had been unable to engage in services sooner because he had to care for an ill parent.  Mother asked for sole legal and physical custody and for termination of jurisdiction.  The juvenile court granted mother sole legal and physical custody; ordered monitored visits for father, which would be reflected in the custody order; and terminated jurisdiction.  The juvenile court stayed the order pending receipt of the written custody order.

The juvenile court received the custody order on June 25, 2021, and it reflected that father would have monitored one-hour visits each week.  Paternal uncle, another appropriate adult approved by mother, or a paid professional could monitor visits.  At that time, father asked the juvenile court to revisit the visitation order.  The juvenile court lifted the stay and continued the matter to July 16, 2021.

At the July 16, 2021 hearing, father's counsel asked for monitored visits three times a week for two hours each. The juvenile court repeated the reasons for its order of monitored visits once a week: father was not compliant with his case plan, he continued to deny the domestic violence in his relationship with mother, and he had not visited Kevin. The juvenile court then terminated jurisdiction.

## DISCUSSION

Father contends that the juvenile court abused its discretion by allowing him monitored visits only once a week for one hour instead of three times a week for two hours each.[2] We disagree.

When a juvenile court terminates jurisdiction over a child, it may make custody and visitation orders that will be transferred to a family court file and remain in effect until the family court modifies or terminates them. (§ 362.4; *In re Chantal S.* (1996) 13 Cal.4th 196, 203.) Such orders are commonly referred to as exit orders. (*In re M.R.* (2017) 7 Cal.App.5th 886, 902.) A juvenile court "may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and

---

[2] DCFS argues that father forfeited this issue because he did not object at the June 2, 2021 hearing when the juvenile court first ordered monitored visits. Although the juvenile court did at that time order monitored visits, it was not clear that the visits would be once a week for one hour. That did not become clear until the custody order was received on June 25, 2021, at which time father's counsel asked to revisit the order. Because the specifics of the visitation order were not clear at the June 2, 2021 hearing, father did not forfeit his ability to challenge the visitation order on appeal.

support of the child." (§ 362, subd. (a).)  As to an order concerning visitation, visitation shall be as frequent as possible, but no visitation order shall jeopardize the child's safety. (§ 362.1, subd. (a).)  In fashioning visitation orders, the juvenile court's focus must be on the child's best interests.  (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268.)  We review a visitation order for an abuse of discretion.  (*In re M.R.*, at p. 902.)

No abuse of discretion occurred here.  Father had a well-documented history of domestic violence with mother.  Although at the hearing father appeared to acknowledge the domestic violence and said it "was on both ends," he had previously repeatedly denied that abuse had occurred and that Kevin had witnessed it.  Indeed, there was substantial evidence to the contrary, that Kevin was present during some violent incidents between parents, including the October 2018 incident where father beat mother and pushed her out of the car on a freeway on-ramp.  So violent were mother and father's altercations that a neighbor could hear the fighting, as well as Kevin crying, screaming, and asking them to stop.

Therefore, the juvenile court was within its discretion to believe that father was still in denial about his history of domestic violence with mother.  That father had neither adequately acknowledged that history or addressed it was further evidenced by his failure to enroll in services until late in the proceedings.  By the time of the last hearing, he had attended just two parenting classes.  Thus, the juvenile court could reasonably have concluded that father had unresolved issues that might recur in the future and that placed Kevin at substantial risk of encountering violence or suffering harm from it.  (See *In re*

7

*E.B.* (2010) 184 Cal.App.4th 568, 576, overruled on other grounds by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1003, fn. 4.)

The juvenile court also did not abuse its discretion by basing its order on father's refusal to visit Kevin during most of the proceedings because father did not think visits should be monitored. By the time of the June 2021 hearing, father had not visited Kevin since February 2020. Father therefore disregarded any interest Kevin might have had in seeing his father. Because Kevin had not seen his father for over a year and was doing well in mother's sole care, the juvenile court could reasonably have determined that more than once weekly visits were not in Kevin's best interest.

To support his argument that the trial court abused its discretion, father relies on *In re T.M.* (2016) 4 Cal.App.5th 1214 and *In re Matthew M.* (2017) 9 Cal.App.5th 1090. However, the parents in those cases were denied *any* visitation. Those cases therefore are not on point because father here was given visitation.

We accordingly conclude that the juvenile court did not abuse its discretion in ordering weekly, one-hour monitored visits for father.

## DISPOSITION

The visitation order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL
REPORTS**

EDMON, P. J.

We concur:

EGERTON, J.

KALRA, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the
Chief Justice pursuant to article VI, section 6 of the California
Constitution.

9