Filed 5/31/23  In re J.K. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re J.K., a Person Coming Under the Juvenile Court Law. | |
| | D081509 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| | (Super. Ct. No. J520626) |
| Plaintiff and Respondent, | |
| v. | |
| S.M., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Marissa A. Bejarano, Judge.  Affirmed.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant, S.M.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Natasha C. Edwards, Deputy County Counsel, for Plaintiff and Respondent.

In this dependency proceeding, S.M. (Mother) appeals a juvenile court visitation order, arguing the court abused its discretion in not ordering unsupervised visitation. The San Diego County Health and Human Services Agency (Agency) contends Mother forfeited this argument by not specifically requesting unsupervised visitation at trial or in her notice of appeal.

We reject the Agency's forfeiture argument but conclude the juvenile court did not abuse its discretion. We affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

J.K. came to the Agency's attention in January 2021 because Mother tested positive for amphetamines and methamphetamine a week prior to the baby's delivery. A nurse also reported concerns about the baby's father, M.K. (Father)[1], because when he visited, he was sweaty, immediately went to sleep on the couch, and appeared to be "coming off something." Mother subsequently admitted to having used methamphetamine once a month leading up to J.K.'s birth. Even though Father suspected Mother was using drugs during her pregnancy, he did not intervene. Both parents reported long histories of drug use and participation in court-ordered substance abuse treatment programs.

The Agency filed a petition under Welfare and Institutions Code[2] section 300, subdivision (b)(1) based on Mother's substance abuse and detained J.K. in a confidential foster home. At the detention hearing, the juvenile court placed J.K. with Father, required Mother to move out of the home, and authorized voluntary reunification services and liberal supervised

[1] The Father is not a party to this case.

[2] All statutory references are to the Welfare and Institutions Code.

visitation for Mother. The court afforded the Agency discretion to allow unsupervised visitation and overnight visits.

Father had a positive hair follicle drug test in February 2021, indicating recent methamphetamine use. And, after Mother told a social worker she was residing with the maternal grandmother, the Agency discovered that Mother had remained in the home with Father and J.K.

At the February 2021 contested adjudication and disposition hearing, the court ordered Mother to comply with her case plan, which required participation in a drug treatment program and Narcotics Anonymous (NA); random drug testing; and parenting education classes. Mother initially attended drug treatment groups and individual counseling, but by May was not enrolled in a drug treatment program, participating in services, or submitting to drug tests. She claimed to be attending a recovery program in May and June, but a social worker contacted the program and learned that Mother was not registered.

In July 2021, counsel for J.K. filed a section 388 petition requesting removal of J.K. from Father's custody after Father missed five drug tests and then was caught by testing personnel trying to falsify a drug test result using a device called a "Whizzinator." Father subsequently tested positive for methamphetamine. Consequently, the juvenile court removed J.K. from Father's custody, placed him with a nonrelative extended family member, and authorized supervised visitation for both parents.

Mother enrolled in a new drug treatment program but tested positive for methamphetamine in July and August 2021. Thereafter, Mother stated that she had difficulty attending her services and drug treatment program due to her work schedule. In March 2022, Mother said she would email pictures of her NA meeting logs, certificates, and drug testing receipts to a

3

social worker, but as of May, the social worker had not received any of the documentation.

During a six-month review hearing in March 2022, Mother requested a contested hearing and listed expanded visitation as a trial issue, along with reasonable services and return of the child to the parents. At the contested six-month review hearing in May 2022, Mother requested unsupervised visits. The court denied the request based on the lack of information that she had mitigated the protective issue in the case. However, the court emphasized that it had granted the Agency discretion to lift supervision and even expand to a 60-day trial visit upon proof that Mother had made progress with her services.

After one negative test in early March 2022, it appears Mother did not complete any drug tests for the remainder of the year. Meanwhile, the Agency placed J.K. with his maternal grandmother in June 2022, because his previous caregivers could no longer provide care for him.

Father was arrested on federal charges and then released in late July 2022 to an inpatient substance abuse treatment program.

Mother resumed drug treatment in August 2022, but left the program by October 2022 due to her work schedule. Mother again failed to email the Agency proof of her NA meeting attendance. She also explained that she did not have a sobriety date because she continued to drink alcohol, which she did not believe was a problem for her.

At the November 10, 2022 pretrial status conference, the court noted the Agency's recommendation that visitation remain supervised. In response, Mother's counsel indicated that expanded visitation and continuation of services would be issues for trial.

4

In December 2022 and January 2023, Mother did not show up for a scheduled drug test and declined the Agency's offer to have a mobile test unit come to her home. The Agency was unable to reach Mother to confirm whether she was participating in any drug treatment services, but it did receive a letter confirming Mother had attended 12 parenting classes. Father had continued to do well in the inpatient drug treatment program and was set to graduate at the end of January. He reported having finished the 12th step with his NA sponsor.

Throughout the life of the case, the Agency frequently had difficulty contacting Mother. However, Mother regularly visited J.K. and the various individuals supervising the visits described them as positive. She consistently interacted lovingly and appropriately with J.K. And, in advance of the pretrial conference, the maternal grandmother filed a request seeking unsupervised visitation for Mother.

At the January 23, 2023 contested 12-month hearing, the Agency recommended the juvenile court terminate both parents' services and set a permanency planning hearing. Mother's counsel asked the court to extend Mother's services, highlighting her consistent and positive visitation with J.K. and efforts to comply with her case plan.

The court concluded that Father had made substantial progress with his substance abuse treatment and extended his reunification services. However, it concluded that Mother had not made progress with regard to substance abuse and, therefore, terminated her reunification services. In so doing, the court did note that Mother regularly and consistently visited J.K. and that the visits were positive. The court then authorized continued "reasonable supervised visitation" and granted the Agency discretion to expand the visitation.

DISCUSSION

I.

*Mother Did Not Forfeit Her Right to Challenge the Juvenile Court's Order*

Mother argues the juvenile court abused its discretion by ordering supervised, instead of unsupervised, visitation at the contested 12-month review hearing. The Agency contends Mother forfeited this basis for appeal because she did not request unsupervised visitation at the contested 12-month review hearing or expressly appeal the supervised visitation order. We disagree.

An appellate court generally will not consider a challenge to a trial court's ruling if the aggrieved party could have, but did not, timely object in the trial court when its purported error could easily have been corrected. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) This forfeiture principle applies equally to dependency matters and precludes a party from "standing by silently until the conclusion of the proceedings." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 222.)

In this case, we conclude Mother sufficiently brought her request for expanded visitation to the juvenile court's attention and preserved the issue for appeal. The Agency's September 2022 status review report recommended termination of Mother's reunification services and reasonable supervised visitation. As the Agency acknowledges, Mother responded to this recommendation during the November 2022 pretrial settlement conference by requesting that expanded visitation be included as an issue for trial. Although Mother's counsel did not then expressly raise the issue during the contested 12-month review hearing, she did ask the court to extend Mother's reunification services. In so doing, counsel highlighted at length Mother's consistent and positive visitation record. It is well established that

6

"[v]isitation is an essential component of a reunification plan" (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1426 (*Tracy J.*)) and that during the reunification period, visitation should be "as frequent as possible, consistent with the well-being of the child." (§ 362.1, subd. (a)(1)(A); *Tracy J.,* at p. 1426.) Thus, a request for continued reunification services impliedly includes a request for continued, frequent visitation. Coupled with counsel's prior emphasis on expanding visitation, we conclude this request adequately raised her objection to the Agency's recommendation of supervised visitation, which the juvenile court impliedly overruled in ordering continued supervised visitation.

Mother also challenged the appropriate order on appeal. A "notice [of appeal] is sufficient if it identifies the particular judgment or order being appealed." (Cal. Rules of Court, rule 8.100(a)(2).) Here, Mother's notice of appeal challenged the juvenile court's January 23, 2023 order, which granted her supervised visitation in addition to terminating her court-mandated reunification services.

While she also specifically indicated that she was appealing the court's termination of her parental rights and services[3], this does not alter our conclusion. A notice of appeal must be liberally construed. (Cal. Rules of Court, rule 8.100(a)(2); *Morton v. Wagner* (2007) 156 Cal.App.4th 963, 967.) California Rules of Court, "[r]ule 8.100(a)(2)'s liberal construction requirement reflects the long-standing ' "law of this state that notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced." ' [Citations] The rule is intended to 'implement the strong public policy

---

3      The order did not actually terminate her parental rights.

favoring the hearing of appeals on the merits.' " (*K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 882.) Mother's notice of appeal correctly identifies the challenged order, which is all that is required. The Agency does not claim it was in any way misled or prejudiced and, because it had notice of all the rulings made in the challenged order, the Agency was in no way hindered in its ability to prepare for the appeal. (*K.J.,* at p. 890.) Mother filed her notice of appeal in propria persona and, to the extent it was in any way unclear, we liberally construe it as challenging the supervised visitation ruling.

Accordingly, we conclude Mother did not forfeit her claim on appeal.

## II.

*The Court Did Not Abuse Its Discretion by Ordering Supervised Visitation*

Mother's contention nonetheless fails on the merits. " 'In matters relating to child custody and visitation rights, the trial court is vested with a wide discretion and its determination will not be disturbed in the absence of a manifest showing of abuse.' " (*In re Sofia M.* (2018) 24 Cal.App.5th 1038, 1044; accord *In re Brittany C.* (2011) 191 Cal.App.4th 1343, 1356 ["We review an order setting visitation terms for abuse of discretion"].) A trial court abuses its discretion only when its decision exceeds the bounds of reason. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319 (*Stephanie M.*).)

Here, the juvenile court's decision at the contested 12-month review hearing was reasonable in view of the evidence presented. The court had already made clear to Mother after she requested unsupervised visitation during the six-month review hearing that it denied her request because she had not demonstrated mitigation of the protective issue in this case—methamphetamine abuse. Although the court granted the Agency discretion to lift supervision upon proof that Mother had made progress with her

8

services, the record shows Mother minimally complied with her case plan and repeatedly failed to provide proof of participation in services to the Agency.

In its report just prior to the contested 12-month review hearing, the Agency explained that Mother continued to decline to drug test and that it had been unable to reach her to confirm whether she was obtaining any form of substance abuse treatment. As Mother's inability to care for J.K. while using methamphetamine was the issue that brought J.K. under the court's jurisdiction, it was not unreasonable for the juvenile court to once again conclude that allowing her to care for the child unsupervised was not in his best interest—particularly given that J.K. was only two years old at the time of the hearing. (See *In re T.M.* (2016) 4 Cal.App.5th 1214, 1220 [explaining that " '[w]hile visitation is a key element of reunification, the court must focus on the best interests of the child[] "and on the elimination of conditions which led to the juvenile court's finding that the child has suffered, or is at risk of suffering, harm specified in section 300" ' "]; *Stephanie M., supra,* 7 Cal.4th at p. 317 [after termination of reunification services, the court continues to focus on determining what is in the best interest of the child].) On more than one occasion, Mother was also dishonest with the Agency about her compliance with court orders and her case plan. This offered further grounds for the court to be concerned about Mother providing unsupervised care for J.K., no matter how positive those visits might be. On this record, we conclude the court did not abuse its discretion in continuing to require supervised visitation.

## DISPOSITION

The January 23, 2023 order is affirmed.


CASTILLO, J.

WE CONCUR:


McCONNELL, P. J.


DATO, J.


10