Filed 9/15/23  In re J.D. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re J.D. et al., Persons Coming Under the Juvenile Court Law. | B323583<br><br>(Los Angeles County Super. Ct. No. 19CCJP01722H-J) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>E.D.,<br><br>     Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Hernan D. Vera, Judge.  Affirmed.

Emery El Habiby, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Tracey Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

The juvenile court assumed dependency jurisdiction over E.D.'s (Father's) three children: Jan.D., Jo.D., and Jac.D., following an incident in which Father arrived home drunk with a self-inflicted gunshot wound, hit the minors, and threatened to kill them. Though the facts suggest a rather obvious answer, we are asked to decide whether substantial evidence supports the juvenile court's order removing the children from Father's custody and whether the court abused its discretion when it denied Father overnight and weekend visits and ordered him to participate in parenting classes.

## I. BACKGROUND

Jan.D. was born in 2006, Jo.D. was born in 2008, and Jac.D. was born in 2009. Father was awarded sole legal and physical custody of the minors in 2019 after the juvenile court sustained a dependency petition alleging they were at risk based on V.M.'s (Mother's) conduct.[1]

The events that led to the dependency orders challenged in this appeal occurred in June 2022, when the Los Angeles Department of Children and Family Services (the Department) was notified of a disturbance at the family home. The

---

[1] In 2021, the juvenile court sustained another dependency petition alleging Father failed to seek timely mental health treatment for Jan.D. and Jac.D. Father was ordered to participate in drug and alcohol services, family preservation services, and individual counseling. The juvenile court terminated dependency jurisdiction about six months later, and this court dismissed as moot Father's appeal from the juvenile court's jurisdiction findings and disposition order. (*In re G.D.* (Aug. 16, 2022, B314503) [nonpub. opn.].)

Department was informed police responded to the home late one evening after receiving reports that Father was assaulting the minors. The minors ran outside when officers arrived and said Father had hit them. The officers saw Father inside the home with blood on his hand. Father attempted to close the door on the officers, but he was taken into custody without further incident. Father had a gunshot wound to his left hand, and officers discovered a bullet hole and traces of skin in his car. Officers did not observe any obvious physical injuries to the minors.[2]

Jan.D. told police that Jo.D. woke her up because Father was outside in his car and appeared intoxicated. Jan.D. approached Father with her younger siblings and Father "began to yell" at her. When he "abruptly" exited the car, Jan.D. ran inside and locked the door. She let Father inside, however, because she feared the situation "would escalate further" as Father "began to bang on the door."

Jan.D. told officers that Father hit all three minors multiple times and said he would "kill [them] if [they] [did not] listen" to him. Jan.D. directed Jac.D. to have a neighbor call the police, and when the neighbor came to the family home to intervene, he and Father "got in a verbal altercation." Jan.D. then directed Jo.D. to remove Father's gun from his car (he "always keeps a gun inside the vehicle") because she was afraid he "might use the gun against [the minors]." Police recovered this gun plus several others that Father kept in his bedroom.

---

[2] The police report noted cockroaches and rat feces throughout the kitchen and disturbing slogans written on the minors' bedroom walls.

4

Jac.D. declined to provide a statement to officers because he was "used to this type of behavior."

A Department social worker spoke with the minors the following day. Jan.D. expanded on her statements to police, explaining Father was drunk and told her he accidentally shot himself in the hand. Jan.D. tried to help him clean the wound, but he "refused" and "began to hit her and her siblings." He told them, "you are the worst thing that ever happened to me. I have to do all this for you guys and you don't do anything for me. I am going to kill you." Jan.D. knew Father kept a loaded handgun in his car, so she and her siblings ran outside to hide it.[3] Jan.D. said Father occasionally drinks, but he was never aggressive and had not previously abused her or her siblings. Jo.D. and Jac.D. both said Father drinks "a lot," but similarly agreed he had never become aggressive before.

A Department social worker discussed the incident with the minors once again about three weeks later. All three of the minors stated Father pushed them out of his way after he exited the car, but Jan.D. and Jac.D. now denied that Father hit them. Jan.D. also denied Father said he was going to kill them. Jo.D. and Jac.D. now also suggested Father was not a heavy drinker.

Father told a Department social worker he was drunk the day of the incident. He "blacked out" and had no recollection of "anything after arriving home," but he "was apologetic and took full responsibility for his actions despite not knowing exactly what had occurred." Father said the minors are aware he keeps guns in safes in the home, but he maintained they "have never

---

[3]     Jo.D. and Jac.D. corroborated Jan.D.'s account of what happened.

5

had access to the guns." Father acknowledged alcohol was "a 'demon' he needed to overcome" and explained he had "turn[ed] to alcohol to cope" with stress caused by work, his mother's health problems, and fatherhood. More specifically, with respect to fatherhood, Father emphasized "he had been struggling with how to respond to his children regarding their mother's actions and their emotions regarding not having her in their life."

The juvenile court detained the minors from Father in July 2022. As of August 2022, Father was visiting the minors at his sister's home every weekend and speaking to them via video every day. He was participating in a substance abuse program, a parenting class, and individual therapy.

At a jurisdiction and disposition hearing in September 2022, Father pled no contest to dependency petition allegations that the children were at substantial risk of suffering serious physical harm based on Father's physical abuse, his history of substance abuse (including marijuana and alcohol), and his possession of a firearm. The Department asked the juvenile court to remove the minors from Father's care and order monitored visitation. Father requested that the minors be released to his custody or that he be granted unmonitored visitation, including weekends and vacations. Counsel for the minors joined in Father's requests, with the condition that the juvenile court should order unannounced visits by Department social workers and/or drug testing.

The juvenile court ordered the minors removed from Father's custody with monitored day visits in the home of Father's sister. Father was also allowed unmonitored visits in a

6

neutral or public setting provided he did not drive the minors.[4] The juvenile court ordered Father to participate in a full drug and alcohol program, parenting classes, and individual counseling.

## II.  DISCUSSION

Father challenges three elements of the disposition order: the removal of the minors from his custody, the denial of unmonitored overnight and weekend visits, and the requirement that he attend parenting classes.  All of the challenges lack merit.

Although the incident triggering the dependency petition might have been out of character for Father (Jac.D. did tell the police the children were used to that sort of behavior, however), substantial evidence supports the juvenile court's determination that the minors needed to be removed from his custody until his issues with stress and alcohol had been addressed.  Similar reasoning supports the juvenile court's visitation order; the safety of the minors alone in his care could not be reasonably assured until Father demonstrated he is in control of the issues that precipitated the violent incident in which he hit his children, threatened to kill them, shot himself, and was so out of control that his children felt compelled to handle a loaded firearm to move it out of his reach.  Finally, Father forfeited his challenge to the order that he attend parenting classes by failing to object in the juvenile court and, in any case, the order is justified by

---

[4]    Although the juvenile court denied Father's blanket request for unmonitored overnight and weekend visits, it indicated it would assess any requests to accompany the children on extended trips "on a case-by-case basis . . . depending on where the trip is and who else will be there."

7

Father's acknowledgment that his difficulty addressing the minors' emotional needs is among the stressors that caused him to drink.

### A. Removal

A juvenile court may not remove a child from a parent's custody unless the court finds "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (Welf. & Inst. Code,[5] § 361, subd. (c)(1).) "'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child.' [Citation.] The court may consider a parent's past conduct as well as present circumstances. [Citation.]" (*In re N.M.* (2011) 197 Cal.App.4th 159, 169-170.) We review the juvenile court's order removing the minors from Father's custody for substantial evidence. (*In re V.L.* (2020) 54 Cal.App.5th 147, 154-155; see also *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011.)

Father contends there were means short of removal by which the juvenile court could have protected the minors, such as "preservation services, family therapy, or wraparound services." Although Father characterizes beating and threatening to kill the minors in June 2022 as an isolated occurrence attributable to

---

[5] Undesignated statutory references that follow are to the Welfare and Institutions Code.

stress and alcohol, nothing in the appellate record indicates the stressors he discussed with a Department social worker had abated by the time of the disposition hearing. Father's acknowledgement that alcohol was a "demon" he needed to overcome and statements by two of the minors that he drank "a lot" indicate his issues with alcohol required longer than the couple of months between the June 2022 incident and the September 2022 disposition hearing to address. Father does not explain how the services he proposes would have accelerated this process or otherwise ensured the minors' safety. Under these circumstances, the juvenile court properly determined the services Father proposes were not a reasonable alternative to removal.

### B. Visitation

A disposition order granting reunification services must provide for visitation "[i]n order to maintain ties between the parent . . . and the child, and to provide information relevant to deciding if, and when, to return a child to the custody of his or her parent . . . ." (§ 362.1, subd. (a); *In re T.M.* (2016) 4 Cal.App.5th 1214, 1218.) Although "[v]isitation shall be as frequent as possible, consistent with the well-being of the child" (§ 362.1, subd. (a)(1)(A)), "[n]o visitation order shall jeopardize the safety of the child" (§ 362.1, subd. (a)(1)(B)). "The power to regulate visits between dependent children and their parents rests with the juvenile court and its visitation orders will not be disturbed on appeal absent an abuse of discretion." (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1070.)

Father contends the juvenile court abused its discretion in denying him unmonitored overnight and weekend visits because

the June 2022 incident was an isolated occurrence and he "had positive visits with the minors and was protective of them." But the juvenile court's concerns about visitation had nothing to do with Father's conduct toward the children when he is sober. The relatively unobtrusive limitations placed on Father's visits with the minors represent the minimum necessary to ensure Father is not intoxicated during visits. Because Father had only a couple of months to demonstrate that he was addressing his issues with stress and alcohol at the time of the disposition hearing, the juvenile court properly exercised its discretion in denying his blanket request for unmonitored overnight and weekend visits.

### C. Parenting Classes

As a general rule, the failure to object in the juvenile court forfeits a parent's right to pursue an issue on appeal. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293; accord *In re N.O.* (2019) 31 Cal.App.5th 899, 935 ["'A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court. [Citations.] Forfeiture . . . applies in juvenile dependency litigation and is intended to prevent a party from standing by silently until the conclusion of the proceedings'"].) Although an appellate court has the discretion to excuse such forfeiture, it should do so "rarely and only in cases presenting an important legal issue." (*S.B.*, *supra*, at 1293.)

Here, Father did not object to the juvenile court's order that he attend parenting classes. Indeed, his attorney emphasized that he was already participating in parenting classes—and implied they were helping—at the disposition hearing. As a result, Father forfeited his challenge to this order on appeal.

10

Even if the argument had not been forfeited, Father's contention that the juvenile court abused its discretion in ordering him to participate in parenting classes because "[h]e had successfully cared for the children as a single parent for many years" and the June 2022 incident was due to a "temporary period of acute stress" lacks merit. "'The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accordance with this discretion. [Citations.]'" (*In re Corrine W.* (2009) 45 Cal.4th 522, 532.) Based on Father's acknowledgment that he struggled to provide the minors with emotional support—and that the stress associated with this contributed to the June 2022 incident—the juvenile court did not abuse its discretion in ordering him to participate in developmentally appropriate parenting classes.

DISPOSITION

The juvenile court's disposition order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

RUBIN, P. J.

KIM, J.