Filed 6/5/26  In re H.D. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re H.D., a Person Coming Under the Juvenile Court Law. | |
| S.D. COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>A.P.,<br><br>    Defendant and Appellant. | D087487<br><br>(Super. Ct. No. J521542) |

APPEAL from an order of the Superior Court of San Diego County, Alexander M. Calero, Judge.  Affirmed.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant.

Damian M. Brown, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, Katie Abajian, Deputy County Counsel, for Plaintiff and Respondent.

# I. INTRODUCTION

A.P. (Mother) appeals the juvenile court's visitation order, arguing the court abused its discretion in not ordering unsupervised visitation with then one-and-a-half-year-old H.D. (Child) at the six-month review stage of this dependency case. We conclude the court reasonably considered the totality of circumstances, including the nature of Child's harm, Mother's delayed engagement in services, and a new domestic violence incident, in finding that supervised visitation was in Child's best interest. We affirm the order.

# II. FACTUAL AND PROCEDURAL BACKGROUND

## A. Events Leading to the Petition

Child came to the attention of the San Diego County Health and Human Services Agency (Agency) in September 2024 after Mother called the police to report that Child's father (Father)[1] had hit her on her head while she was holding Child, an infant at the time. According to the police report, Mother disclosed several prior unreported domestic violence incidents between her and Father.

In January 2025,[2] the Agency received a referral alleging that then six-month-old Child had bruising on his right cheek. Mother was unable to explain how the injuries occurred. In an interview with a social worker, Mother reported that Father hit her a few days earlier, causing a dark bruise and blood in the corner of her left eye. A medical examination of Child revealed he had previously sustained two bilateral skull fractures, a right

---

[1]    Because Father is not a party to this appeal, we discuss him only when relevant.

[2]    All dates herein are for the year 2025, unless otherwise specified.

femur fracture, and a left tibia fracture. Initially, the parents denied knowing how Child's bruising or fractures occurred but later disclosed that Child had fallen off the bed three to six times. Parents also described a recent incident where, during an argument, Father pulled Child out of Mother's arms and Mother pulled Child back. Doctors reported that bruising on children Child's age was "incredibly rare" and concluded that Child's injuries were indicative of multiple instances of physical abuse. Father was arrested for charges related to child abuse, and a criminal protective order (CPO) protecting Mother and Child from Father was issued.

## B. Petition and Detention Hearing

On January 9, the Agency filed a petition under Welfare and Institutions Code[3] section 300, subdivision (a), based on physical abuse. At the detention hearing, the juvenile court ordered Child detained. It further ordered voluntary services and separate, liberal, and supervised visitation for the parents. The court afforded the Agency discretion to allow unsupervised visitation and overnight visits. On January 14, Child was detained with a relative caregiver.

## C. Jurisdiction and Disposition Hearing

At the April 28 jurisdiction and disposition hearing, the Agency reported that Mother was arrested on March 14 for spousal/cohabitant abuse in connection with an altercation involving another individual. The victim alleged that Mother got angry and swung at him because he would not give Mother money to buy alcohol. Law enforcement observed several scratches on the victim's neck and arms.

---

[3] Further undesignated statutory references are to the Welfare and Institutions Code.

3

The juvenile court found the Agency met its burden of establishing by a preponderance of the evidence the allegations in the petition were true. In reaching its decision, the court considered Mother's admission to domestic violence between her and Father, Mother's recent arrest for domestic violence, and the medical professionals' opinions that the injuries were consistent with multiple instances of physical abuse. The court also noted that mother violated the CPO by communicating with Father while he was incarcerated. The court concluded that Child was at substantial risk of serious physical harm in the future. The court also found by clear and convincing evidence that removal was appropriate, ordered continued supervised visits subject to the CPO, and rejected Mother's request to expand visitation.

### D. Agency Reports and the Six-month Review

In its October 27 status review report and supporting documents, the Agency reported that Mother visited Child two to three times per week in a supervised setting and the interaction with Child was positive. Mother's case plan required her to take steps to avoid domestic violence, monitor and pay attention to Child, develop a positive support system, and refrain from physically abusing Child. As a component of her case plan, Mother was required to participate in a nonprotective parenting/child abuse group. At the time of the status review report, however, Mother had been discharged from this group due to excessive no-shows. The Agency submitted a second referral for the nonprotective parenting/child abuse class. The Agency advised that Mother needs to consistently engage in services to address the protective issues, and it recommended that Child remain with the relative caregiver with supervised visitation for Mother.

4

In its December 15 addendum, the Agency reported that Mother continued to have consistent and positive supervised visits with Child, but it still had concerns about Mother's level of understanding about the need for services and the severity of Child's injuries. Mother had declined parenting services. The nonprotective parenting/child abuse class rejected the Agency's second referral due to concerns relating to Mother bringing alcohol to the group and wearing inappropriate attire. The Agency's recommendations remained unchanged.

At the six-month review hearing on January 14, 2026, the juvenile court received into evidence the Agency's October 27 and December 15 reports and a letter from Community Services for Families, which showed that Mother had participated in three in-home parenting education sessions. Mother was also scheduled to begin nonprotective parenting/child abuse group services in January 2026. Mother requested the court return Child to her care or, alternatively, expand her visitation to structured, unsupervised visits.

The juvenile court acknowledged the barriers Mother faced in making progress on her case plan, commended her renewed engagement in services, but determined that additional progress was necessary to address the protective concerns before visitation could be expanded. The court also considered the serious physical harm Child suffered, the parents' lack of explanation for the injuries, and Mother's continued involvement in domestic violence with someone other than Father. Adopting the Agency's recommendations, the court ordered continued placement for Child and supervised visits with Agency discretion to expand the visits.

### III.  DISCUSSION

Mother contends the juvenile court abused its discretion in not ordering unsupervised visitation with then one-and-a-half-year-old Child at the six-month review hearing.  "One of the dependency court's responsibilities is to define the rights of the parties to visitation by balancing the rights of the parent with the best interests of the child." (*In re R.R.* (2010) 187 Cal.App.4th 1264, 1284.)  "Visitation shall be as frequent as possible, consistent with the well-being of the child." (§ 362.1, subd. (a)(1)(A).)  In balancing these interests, the court in the exercise of its discretion may impose "conditions or requirements" on visitation consistent with the child's best interest.  (*In re Jennifer G.* (1990) 221 Cal.App.3d 752, 757.)  We review an order setting visitation for abuse of discretion.  (*In re R.R.*, at p. 1284.)

Here, the juvenile court's decision at the 6-month review hearing was reasonable in view of the evidence presented.  The court had already made it clear to Mother that, in addition to consistent and regular visitation with Child, Mother would need to make significant progress in resolving the problems that led to removal and demonstrate a capacity and ability to complete the objectives of the treatment plan.  Although the court granted the Agency discretion to lift supervision upon proof that Mother had made progress with her services, the record shows Mother minimally complied with her case plan and did not adequately address the underlying domestic violence that led to removal.  In these circumstances, it was reasonable for the court to once again conclude that allowing Mother to care for Child unsupervised was not in his best interest at this early stage of the proceeding—particularly given that Child was only one and a half years old at the time of the hearing.  (See *In re T.M.* (2016) 4 Cal.App.5th 1214, 1220 [explaining " '[w]hile visitation is a key element of reunification, the court

6

must focus on the best interests of the child[] "and on the elimination of conditions which led to the juvenile court's finding that the child has suffered, or is at risk of suffering, harm specified in section 300" ' "].)

The juvenile court's decision was also supported by the fact that Mother engaged in a violent confrontation with another individual after Child was removed. This offered further grounds for the court to be concerned about Mother providing unsupervised care for Child, notwithstanding their positive supervised visits. The court therefore acted within its discretion to protect the safety of Child. (§ 362.1, subd. (a)(1)(B).)

Finally, the juvenile court granted the Agency discretion to allow Mother unsupervised and/or overnight visits with 72 hours' notice to Child's counsel. The court may delegate discretion to the Agency regarding "the time, place and manner of the visits" (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1009), and we assume the Agency will exercise this discretion with the goal of normalizing contact between Mother and Child when it is safe to do so in the exercise of its "statutory mandate to supervise each case in a manner consistent with the child's best interests." (*Moriah T.* (1994) 23 Cal.App.4th 1367, 1376.)

## IV.  DISPOSITION

The juvenile court's visitation order is affirmed.


BUCHANAN, J.

WE CONCUR:


O'ROURKE, Acting P. J.


CASTILLO, J.