Filed 10/27/23  In re R.M. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re R.M., JR., a Person Coming Under the Juvenile Court Law. | B325383 (Los Angeles County Super. Ct. No. 21CCJP02844A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>R.M.,<br><br>Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Craig S. Barnes, Judge.  Affirmed.

Jesse Frederic Rodriguez, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

In 2021, the juvenile court sustained a dependency petition and declared R.M., Jr. a dependent of the court. (Welf. & Inst. Code, §§ 300, 360, subd. (d).)[1] In 2022, the court sustained a "subsequent" petition against appellant R.M. (Father) under section 342. Father had coerced R.M., Jr. to lie about abuse by threatening that the youngster's relatives will be shot and the child will be sent to jail.

Father appealed the ruling on the sustained 2022 petition. While his appeal was pending, dependency jurisdiction ended. The court granted custody to the child's mother, L.C. (Mother), with no visits for Father until he completes or makes substantial progress in a domestic violence program, parenting classes, counseling, and drug testing.

We conclude that Father's appeal is moot. No review on the merits is required because he has not shown a specific legal or practical consequence that will be averted upon reversal. (*In re D.P.* (2023) 14 Cal.5th 266, 273.) This is not an appropriate case for discretionary appellate review on the merits, and Father's claims have no merit in any event. We affirm.

_____

[1] Undesignated statutory references in this opinion are to the Welfare and Institutions Code.

## FACTS AND PROCEDURAL HISTORY

R.M., Jr. was born in 2014. In 2020, Mother called respondent Los Angeles County Department of Children and Family Services (DCFS) to report that Father struck her, keeps a gun within R.M., Jr.'s reach, threatened to shoot her relatives, and uses drugs. Father's behavior caused the child to become "more aggressive towards her." Father was arrested for domestic battery. DCFS closed the referrals without a filing petition.

In 2021, R.M., Jr. told police officers that Father curses at him, pushed Mother into a wall, causes him to cry, and uses drugs in his presence. During an ensuing DCFS investigation, Father tested positive for cocaine and marijuana. R.M., Jr. fears Father, who " 'yells at me a lot' " and hits Mother.

DCFS detained R.M., Jr. from Father and filed a petition. The child remained with Mother, who resides with her relatives. She obtained a restraining order against Father, who threatened her with a revolver when she asked to end their relationship, and jumped on the hood of her car, with R.M., Jr. inside, as she was leaving. The court found a prima facie case supporting detention from Father.

On August 23, 2021, the court sustained the petition, finding that Father perpetrated violent altercations in the child's presence, in which he struck and pushed Mother, threatened her with a gun, threatened to kill her family, and isolated her from her relatives, which endangers R.M., Jr.'s health and safety; Mother failed to protect R.M., Jr. by allowing Father to reside with and have unlimited access to the child, placing him at risk of serious harm; Father's abuse of cocaine and marijuana makes him incapable of providing regular care and endangers R.M., Jr.'s health and safety.

The court declared the child a dependent, removed him from Father and placed him with Mother under DCFS supervision. Father was ordered to participate in counseling and parenting classes and test for drugs; his visits were monitored. The jurisdiction and disposition orders were not appealed.

In early 2022, Father tested positive for marijuana and was directed to undergo more drug tests. He was complying with the case plan. The court authorized Father to have unmonitored weekend visits with R.M., Jr. The social worker (CSW) opined that Father had made significant progress and recommended that he share custody of R.M., Jr.

In May 2022, Mother obtained a temporary restraining order against Father after he forcibly touched her and kissed her. When she pushed him away and told him to stop, he grabbed her so tightly that she was bruised. Despite issuing a permanent restraining order in June 2022, the court found that Father had mitigated the causes leading to dependency jurisdiction and R.M., Jr. would not be at risk in his care.

In July 2022, DCFS reported that Father refused to relinquish his guns, in violation of court order, saying he had a right to keep them. He continued to contact Mother by phone, insulted her parents at child exchanges, and failed to return R.M., Jr. after visits. When CSW advised Father that his visit was canceled, due to his behavior, Father became "irrational, volatile, angry and aggressive." The court ordered Father to address anger management in counseling and test for drugs, on suspicion of abuse. Father presented a dealer's record showing the sale of his firearms on the day of the hearing.

Matters worsened. Father refused to return R.M., Jr., blocked CSW on his phone, refused to allow CSW to assess R.M.,

Jr.'s safety, sent the child out of state with the paternal grandmother, without court permission, and acted bizarrely. The court ordered Father to test for drugs, undergo a psychological assessment, and cooperate with DCFS.

On August 10, 2022, DCFS obtained a removal order after R.M., Jr. said Father threatened to shoot family members. The child was fearful and did not want to return to Father. Father violated the restraining order by driving to Mother's home and yelling threats that R.M., Jr. heard. The child said Father "forced him" to tell DCFS that Mother's family hurts and neglects him, and if he did not lie about the abuse, his relatives would be killed and the child will go to jail. R.M., Jr. said Father threatened that " 'my whole family will be shot.' " He was upset, scared, and did not want to see Father or have Father know he disclosed the coercive behavior to CSW. The court ordered counseling for the child. It also ordered that Father's visits be monitored at a police station.

DCFS filed a subsequent petition. (§ 342.) It alleges that R.M., Jr. was declared a dependent of the court due to domestic violence; Father violated a protective order by harassing Mother, driving to her home and screaming at her, which places R.M., Jr. at risk of serious harm; Father has mental and emotional problems, including paranoid and aggressive behaviors that render him incapable of providing regular care; and he emotionally abused his son by coercing him to lie about Mother by threatening that the family would be shot and killed and R.M., Jr. jailed, if the child did not mislead DCFS, causing the child to fear Father and risk serious emotional damage.

DCFS also filed a supplemental petition seeking a more restrictive placement because the existing disposition did not

5

protect the child. (§ 387.) It alleges that Father failed to comply with court orders. He did not return R.M., Jr. to Mother's care when his visits ended; did not make the child available to DCFS; and did not participate in drug testing.

DCFS sought an order protecting CSW from Father. He used profanity and threatened social workers; they were unwilling to monitor his visits because he poses a danger to them. After threatening to "do his wors[t]," Father read out loud CSW's home address, then hung up the phone; CSW stopped servicing R.M., Jr.'s case, owing to her fear of Father, who then cursed at the newly assigned CSW. The court issued a restraining order against Father to protect CSW. Minor's counsel stated that R.M., Jr. is scared of Father, even while in the courtroom.[2]

Father denied the allegations. On August 26, 2022, the court found that Father poses a substantial danger to R.M., Jr.'s physical and emotional health. It released the child to Mother, suspended Father's visits, and ejected Father from the courtroom for obstructing proceedings.

Law enforcement records show that Father violated the restraining order. His recent drug tests were positive for marijuana. He blamed DCFS and Mother's family for his woes and denied any wrongdoing or violations of the restraining order. He denied mental health issues. He denied telling R.M., Jr. to lie to DCFS He did not understand the gravity of his actions or take responsibility for them.

---

[2] Minor's counsel noted that R.M., Jr. was "scared . . . when he appeared in court. He wore sunglasses in court. He appeared scared throughout the proceeding in front of multiple deputies" and had to be escorted out because Father was "visibly agitated, emotional, aggressive."

Mother reported that 12 car tires (including hers) were recently slashed at her family's home; she suspects Father was the culprit.  R.M., Jr. reiterated that Father told him to lie about abuse and refused to return him to Mother's care at the end of a visit.  He understands that Father demands lying " '[b]ecause he wants me to live with him.' "  R.M., Jr. said he is sad and cries when Father yells.  He is not abused or neglected at Mother's home.

At adjudication on October 28, 2022, the court sustained the supplemental petition, finding that Father violated court orders by failing to return R.M., Jr. to Mother's care and by keeping the child from DCFS.

The court sustained two counts in the subsequent petition. (§ 342.)  In sustaining the section 300, subdivision (b) count, it found that the parental history of violent altercations in the child's presence led to dependency jurisdiction, and Father violated a protective order by driving to Mother's home and screaming at her.  In the section 300, subdivision (c) count, it found that Father emotionally abused R.M., Jr. by making continuous accusations that Mother abuses and neglects the child; preventing the child from seeing Mother; instructing him to give false and misleading information to DCFS about abuse at Mother's home; and telling the child that the family will be shot and the child jailed if he does not lie, causing the child to fear Father and be at risk of anxiety, depression, withdrawal, and aggression.  Mother was not named in the petition and the court deemed her a nonoffending parent.

The court stated that R.M., Jr. remains a dependent of the court and released him to Mother.  Father poses a substantial danger to the child's physical and emotional health.  He has not

7

made progress to alleviate the causes leading to the child's original detention.  The court denied visitation for Father.  It ordered him to participate in counseling and anger management services, drug testing, take prescribed medications, and undergo a psychological assessment.  Over Father's objection, the court granted a permanent restraining order to CSW.  Father appealed.

We have taken judicial notice of later proceedings.  On June 30, 2023, the court terminated dependency jurisdiction.  In a judgment issued July 5, 2023, the court denied visitation because Father has not completed or made substantial progress in a domestic violence treatment program, parenting classes, individual counseling, or satisfied drug testing requirements.  It declared, "Upon completion of these services and a demonstration of progress, father may seek visitation in a therapeutic setting."  Father's appeal from the 2023 order is currently pending in case number B331424.

## DISCUSSION

### 1. Mootness and Forfeiture of Claims

DCFS asserts that Father's appeal from the October 2022 orders should be dismissed as moot.  There are multiple reasons why the appeal fails.

First, Father's challenge to the suspension of his visits is untimely.  Father's opening brief states, and the record shows, that his visits were suspended in August 2022, when the court found that "visitation for the father is currently detrimental."  Father did not appeal the August 2022 order.  The court retained the suspension at the hearing in October 2022, as Father recognizes in his brief.  Father forfeited his challenge to the suspension of his visits. (*Adoption of Alexander S.* (1988) 44

8

Cal.3d 857, 864 [court cannot address belated claims that were not appealed].)

Second, Father's challenge to one basis for jurisdiction is moot because *un*challenged bases underlie jurisdiction. "[W]here there are multiple findings against one parent[,] the validity of one finding may render moot the parent's attempt to challenge the others." (*In re D.P., supra,* 14 Cal.5th at pp. 283–284; *In re Jonathan B.* (1992) 5 Cal.App.4th 873, 875 [one valid finding supports affirmance and moots a challenge to other jurisdictional bases]; *In re Ashley B.* (2011) 202 Cal.App.4th 968, 979; *In re D.M.* (2015) 242 Cal.App.4th 634, 638–639.)

Here, the court already had jurisdiction after sustaining the original petition in August 2021. A year later, it sustained the subsequent petition under section 300, subdivisions (b) and (c) and sustained the supplemental petition as well. On appeal, Father challenges only the section 300, subdivision (c) count and does not contest the other sustained counts. There is no doubt that dependency jurisdiction existed over R.M., Jr.

Third, the appeal is moot because the dependency case has ended. At the request of DCFS, we take judicial notice that the court terminated dependency jurisdiction over R.M., Jr. in 2023. Its order states, "Monitored visits for father in a therapeutic setting ONCE detriment finding has been lifted by Family Law Court. No visits unless and until Family Law Court lifts the detriment finding."

Our Supreme Court addressed the issue of mootness in *In re D.P., supra,* 14 Cal.5th 266. D.P., an infant, suffered a rib fracture that his parents could not explain. The juvenile court sustained a petition, finding that D.P. suffered serious harm as a result of parental failure to adequately supervise him. While an

9

appeal was pending, the court terminated jurisdiction, finding that the parents complied with the case plan and D.P. was no longer at risk. The Court of Appeal dismissed the case as moot because dependency jurisdiction had ended. (*Id.* at p. 272.)

On review, the court agreed that the appeal was moot: Though the jurisdictional finding was "stigmatizing," the parent "has not demonstrated a specific legal or practical consequence that would be avoided upon reversal of the jurisdictional findings." (*In re D.P., supra,* 14 Cal.5th at p. 273.) Nonetheless, the Court of Appeal had discretion to review the case. (*Ibid.*) The court noted, "To be clear, when a parent has demonstrated a specific legal or practical consequence that will be averted upon reversal, the case is not moot, and merits review is required. When a parent has not made such a showing, the case is moot, but the court has discretion to decide the merits nonetheless." (*Id.* at p. 283.)

After DCFS asserted that his appeal is moot, Father did not reply, offering no response to the argument. He has not demonstrated a specific legal or practical consequence that will be averted upon reversal. Accordingly, the case is moot, and merits review is not "required." (*In re D.P., supra,* 14 Cal.5th at p. 283.)

We must decide if this case is appropriate for discretionary review. In deciding whether to exercise discretion, "Courts may consider whether the challenged jurisdiction finding ' "could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings,' or 'could have other consequences for [the appellant], beyond jurisdiction." ' " (*In re D.P., supra,* 14 Cal.5th at p. 285.) "A prior jurisdictional finding can be considered." (*Ibid.*) "Jurisdictional findings may also

10

impact the child's placement [citation] or subsequent family law proceedings." (*Ibid.*) "The exercise of discretionary review may also be informed by whether the jurisdictional finding is based on particularly pernicious or stigmatizing conduct." (*Id.* at pp. 285–286.) The interests of justice may be served by review "where a parent does not challenge all jurisdictional findings, but only one finding involving particularly severe conduct." (*Id.* at p. 286.) Discretionary review "may be especially appropriate" if the case becomes moot because the parents promptly complied with the case plan. (*Ibid.*)

Discretionary review is not appropriate here. Father did not promptly comply with the case plan.[3] Indeed, the court forbade any visits because Father ignored the case plan. He was repeatedly ordered to test for drugs and have a psychological assessment to probe his alarming behavior, but he refused to comply. The sustained charge is not particularly pernicious or stigmatizing because it does not involve physical or sexual abuse. (*In re D.P., supra,* 14 Cal.5th at pp. 285–286.)

The court made jurisdictional findings against Father in 2021, when it sustained the original petition. The current findings are no more severe than prior findings that Father struck Mother, threatened to kill her family, and abused drugs. The current rulings did not alter R.M., Jr.'s placement. The sustained petitions in 2022 merely *continued* the court's existing jurisdiction over R.M., Jr. As a result, our review of one count has no impact on the status of the dependency proceeding.

---

[3] To be precise, when CSW called Father to provide him with referrals in August 2022, he said, "I'm not doing shit you guys ask me to do. Fuck that."

11

## 2. The Record Supports the Rulings
### a. Jurisdictional Finding

Even if we exercise our discretion and review Father's claims on the merits, there is no basis for reversal. He argues that his conduct toward R.M., Jr., "while manipulative and coercive, [was] not sufficiently emotionally abusive under section 300, subdivision (c)." He is mistaken.

Father told R.M., Jr. that his entire family will be shot and the child jailed. Father violated restraining orders and yelled threats outside Mother's home, which R.M., Jr. heard. Father's treatment of the boy—yelling and cursing at him—caused R.M., Jr. to cry. As a result of Father's conduct, the child showed fear of Father, even when in a courtroom with armed deputies. (See fn. 2, *ante.*)

Father concedes that his threats "rightfully scared" the child but minimizes his conduct by arguing that he did not threaten to do the shooting himself so R.M., Jr. had no "reason to personally fear for his safety in his father's presence or by his father's hand." This is absurd. R.M., Jr. understood that the only person motivated to shoot Mother and her family—and blame R.M., Jr. for it—is Father. R.M., Jr. complained that *Father* coerced him to lie about abuse by maternal relatives by issuing lethal threats, which explains the child's fear of Father. Even if Father did not threaten to shoot R.M., Jr., it would not lessen the terror of an eight-year-old child forced to contemplate the death of his entire family. (See *In re D.B.* (2020) 48 Cal.App.5th 613, 621 [causing a child to live in fear of violence justifies a sustained finding].)

On this record, the juvenile court could readily find that R.M., Jr. is suffering serious emotional damage or is at

12

substantial risk of suffering serious emotional damage, as evidenced by severe anxiety, depression, or withdrawal, as a result of Father's conduct.  (§ 300, subd. (c).)

Father's coercive efforts to force his son to falsely tell DCFS that he was abused by Mother and her family is "psychological warfare [that] cannot help but subject the child[ ] to a substantial risk of emotional harm."  (*In re Christopher C.* (2010) 182 Cal.App.4th 73, 84.)  At no point has Father "recognized the inappropriateness of [his] past behavior" or "expressed a willingness to change [his] behavior patterns and to attend counseling and parenting classes."  (*In re Brison C.* (2000) 81 Cal.App.4th 1373, 1381.)  The opposite is true:  Father denies any need to change his behavior.  (See fn. 3, *ante*.)  He blames others, including DCFS, for the all the problems he caused.

### b.    Suspension of Visitation

As noted in part 1, *ante*, Father did not timely appeal the August 2022 order suspending his visits.  Even if the appeal is cognizable, we would affirm the order.  The record belies Father's claim that his behavior was not so severe or emotionally abusive that it justified the suspension of visits.

Visitation must be "consistent with the well-being of the child" and cannot "jeopardize the safety of the child."  (§ 362.1, subd. (a)(1)(A)–(B).)  " 'While visitation is a key element of reunification, the court must focus on the best interests of the children "and on the elimination of conditions which led to the juvenile court's finding that the child has suffered, or is at risk of suffering, harm . . . ." ' . . . '[I]f visitation is not consistent with the well-being of the child, the juvenile court has the discretion to deny such contact . . . . "[W]ell-being" includes the minor's emotional and physical health.' [Citation.]  In effect, the juvenile

court may deny visitation by finding that forced contact with a parent is harmful to the child." (*Serena M. v. Superior Court* (2020) 52 Cal.App.5th 659, 673; *In re T.M.* (2016) 4 Cal.App.5th 1214, 1219–1220.) "[A] court has the power to suspend visits when continuing them would be harmful to a child's emotional well-being. If that were not the case, a court would be required to sit idly by while a child suffered extreme emotional damage caused by ongoing visits." (*In re Brittany C.* (2011) 191 Cal.App.4th 1343, 1357.)

Father never eliminated the conditions justifying the court's assertion of jurisdiction in 2021. On the contrary, his behavior worsened during the proceeding to the point that he felt it suitable to tell a young child that his family would be shot and the child jailed. Father also threatened a social worker, leading to additional restraining orders. Given Father's increasing threats of violence, the court properly declined to force R.M., Jr. to see Father, after the child continually expressed fear of him. The danger to the child's physical and mental health is manifest. The court need not wait until a child is actually harmed to take steps to protect him. (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

14

**DISPOSITION**

The orders are affirmed.

NOT TO BE PUBLISHED.


                                                    KWAN, J.*

We concur:



CHAVEZ, Acting P. J.



HOFFSTADT, J.

---

*\* Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.*