Filed 5/22/24  In re G.D. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| In re G.D. a Person Coming Under the Juvenile Court Law. | |
| | D083297 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. EJ4899) |
| R.D., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Mark T. Cumba, Judge.  Reversed and remanded with directions.

Jill Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Natasha C. Edwards, Deputy County Counsel, for Plaintiff and Respondent.

K.M. (Mother) and R.D. (Father) are parents to nine-year-old G.D. Mother also has two other minor children, G.D.'s half-siblings, who resided with the family. In July 2021, G.D.'s half-siblings reported that Father had sexually abused them for several years, and Father was arrested and charged with criminal offenses related to the alleged abuse. A protective order was then issued that prevented Father from contacting Mother, G.D., or G.D.'s half-siblings.

After Father was arrested, G.D. was declared a dependent of the juvenile court due to Mother's mental health and substance abuse issues. The juvenile court issued dispositional orders that required Father to participate in sexual abuse offender group classes, and to complete various "service objectives" listed in the San Diego County Health and Human Service Agency's case plan. Among other requirements, the service objectives required Father to show acceptance and support for the disclosures of the abuse alleged by G.D.'s half-siblings and to write the children letters of apology.

On appeal, Father objects to the sexual abuse offender treatment and related service objectives in the Agency's case plan. He argues there is insufficient evidence to support these requirements, and therefore the juvenile court abused its discretion in imposing them as part of its dispositional orders. He additionally contends the service objectives impermissibly require him to admit to criminal conduct which may be used against him in his pending criminal proceedings.

As we shall discuss, we conclude there is sufficient evidence to support the requirement that Father participate in sexual offender treatment. However, aspects of the Agency's case plan require Father to admit to criminal conduct in a manner not subject to the statutory immunity provided

2

by Welfare and Institutions Code section 355.1, subdivision (f). Accordingly, we remand for the juvenile court to revise its dispositional orders in a manner that does not compel Father to make inculpatory statements outside section 355.1(f)'s statutory immunity parameters.

## I.

### A.

In January 2020, Mother, Father, and G.D. moved to northern California with Mother's two minor daughters, who were then aged nine and twelve years old. While the family resided in northern California, the daughters disclosed that Father had sexually abused them for the past several years. The Department of Children and Family Services conducted forensic interviews, during which the children described the abuse perpetrated by Father. The children confirmed Father had "been touching them inappropriately for the past several years." The Department substantiated the claims of abuse against the children, and Mother notified the police.

Father was arrested and charged with lewd and lascivious acts with a child under 14 years old. (Pen. Code, § 288, subd. (a).) Following his arrest, Mother obtained a five-year protective order prohibiting Father from contacting Mother or her children, including G.D. As of the jurisdiction and disposition hearing, Father's trial in the criminal matter was still pending.

### B.

Following Father's arrest, Mother moved to southern California with the children. In September 2023, police responded to Mother's residence when it was reported she was intoxicated and breaking things in the home. During the incident, Mother and her boyfriend argued and threw objects at each other. Mother also threw an object at G.D., which missed when he

3

ducked. When police entered the home, they observed dog feces and urine where G.D. slept, and noticed the refrigerator was broken and there was no food in the home. Additionally, police found an unsecured firearm.

G.D.'s maternal grandparents were called to the scene, and they agreed to provide care for G.D. In an interview with the Agency following the incident, G.D. reported that Mother and her boyfriend argue frequently. According to G.D., Mother and her boyfriend drink a lot of beer, and G.D. is scared when Mother is drunk.

In response to the incident, Mother agreed to a safety plan that required her to clean the home and participate in a substance abuse assessment. Mother complied with the safety plan requirements and G.D. returned home from his maternal grandparents' care. However, soon after, Mother was again found intoxicated in the home. Mother's boyfriend reported that she had a gun and was threatening to kill herself. He also alleged Mother attempted to hang herself twice the day prior.

G.D. was again released to his maternal grandparents' care. The Agency attempted to develop another safety plan, but Mother did not agree to engage with the plan. She told the Agency she "did nothing wrong" and that her prior attempts to harm herself were "a joke."

In October 2023, the Agency petitioned the juvenile court on G.D.'s behalf and requested a protective custody warrant. The petition alleged G.D. faced a substantial risk of harm because Mother was unable to adequately supervise or protect him, and she was unable to provide him regular care due to her mental illness, developmental disability, or substance abuse issues. (§ 300, subd. (b)(1)(A), (D).) The petition also alleged Father was unable to supervise G.D. because of his incarceration, thereby necessitating the juvenile court's intervention.

4

The juvenile court granted the Agency's request for a protective custody warrant pursuant to section 340(a) and detained G.D. in out-of-home care. At the detention hearing, the court made prima facie findings that G.D. fell within the jurisdiction of the juvenile court. The court then set a jurisdiction and disposition hearing and ordered both parents to be present.

C.

The juvenile court conducted the jurisdiction and disposition hearing in December 2023. Without objection, the court admitted several reports into evidence, including the Agency's detention report, the jurisdiction and disposition report, and an addendum report. The Agency's initial and updated case plan were included with the reports admitted into evidence.

In the detention report, the Agency summarized the allegations of sexual abuse and the pending criminal charges against Father. The Agency also reported that Mother believed Father had sexually abused G.D. According to Mother, after Father was arrested, G.D. appeared relieved that Father was incarcerated and he said he hoped Father would die. Mother also reported that on one occasion, Father told her that G.D. attempted to "kiss him on his penis over his pants." Mother believed Father said this so that "if she saw something like that occurring, there would be a previous explanation."

The Agency's case plan, signed by Agency social workers on November 21, 2023, required Father to attend a "Sexual Abuse Perpetrator Group." The Agency proffered that this requirement was necessary, "[d]ue to the substantiated sexual abuse allegations, against [G.D.'s] half-sisters . . . to ensure [G.D.] is not at risk for sexual abuse." The case plan indicated that the sexual offender group class would require Father to develop a "Re-molest Prevention Plan, list consequences of his behavior to both the victim and the

5

family, and prepare an apology letter for the victim (if appropriate), as well as any other goals developed by the provider."

The case plan also included a list of "service objectives," one of which stated: "Do not sexually abuse your child(ren)." Under this service objective, the following requirements were listed:

- [Father] will listen to and show acceptance and support of the disclosure made by [G.D.'s] siblings.
- [Father] will be able to identify his own triggers that led to the siblings being sexually abused including how he intends to manage those triggers in the future.
- [Father] will list consequences of his behavior to both the victims and his family.
- [Father] will understand how his actions place [G.D.] at risk.
- [Father] will list at least five challenges the children he sexually abused, now face[] as a result of the sexual abuse.
- [Father] will demonstrate that he can follow the safety guidelines that have been put in place so that the abused children are not alone with him and/or sexually touched again.
- [Father] will take ownership of his actions and understand the negative impact his actions have had on [G.D.'s] siblings.
- [Father] will develop insight into the original protective issue and the role he played.
- [Father] will write a letter of apology to [G.D.'s] sibling[s] explaining his role in the sexual abuse (if appropriate) and exactly what he commits to doing to ensure that the children are never sexually abused again.

During the jurisdiction and disposition hearing, Father waived objection to jurisdiction and submitted to the juvenile court's order regarding G.D.'s placement. However, Father objected to the "sexual abuse portion of his case plan," including the sexual offender treatment program. He argued the Agency had not met its burden, by a preponderance of the evidence, that he committed sexual abuse against G.D's half-siblings, or that he posed a risk

6

of sexual abuse to G.D.  Father noted that although the allegations of sexual abuse were substantiated, the Agency did not file juvenile dependency petitions alleging abuse against G.D.'s half-siblings.  And regardless of the veracity of the allegations, Father argued the sexual abuse classes were not "reasonably necessary to avoid a repetition of the protective issues of substance abuse and domestic violence" alleged against Mother.

Father also asked the court to strike "Section 2 under [the] 'Service Objectives of the Case Plan' titled 'Do Not Sexually Abuse Your Children.'" Emphasizing that he was currently facing criminal charges, Father argued this section of the case plan required him to admit the sexual abuse alleged by G.D.'s half-siblings, which could be used against him in his criminal trial.

In response, the Agency pointed to Mother's statements in the jurisdiction and disposition report regarding her concerns of the "sexual abuse of [G.D.]."  The Agency acknowledged that there were no dependency petitions filed on behalf of Mother's daughters following their allegations of sexual abuse.  However, the Agency proffered this was because "Father was incarcerated and there would have been no protective concern with the father not having access to those children."  The Agency emphasized that the allegations of sexual abuse against Father were substantiated by the Department and Father was currently facing criminal charges relating to the alleged sexual abuse.

Following the parties' arguments, the court made true findings on the petition and declared G.D. a dependent of the juvenile court.  Regarding Father's objections to the case plan, the court stated, "given [Father's] current status . . . and the pending charges, but more so the reference in the [jurisdiction and disposition] report, of possible abuse to this minor, [G.D.], the court does find that the case plan is appropriate and will order the

7

Agency to provide services consistent with the case plan to both Mother and Father, and will order the Mother and Father to comply with the case plan."

## II.

Father appealed and challenges the sexual abuse offender treatment and related service objectives in the Agency's case plan.

## A.

Upon finding a child is within the juvenile court's jurisdiction, the juvenile court must then proceed to the dispositional phase. (*In re N.M.* (2011) 197 Cal.App.4th 159, 169.) At the disposition hearing, the juvenile court may "'direct any reasonable orders to the parents' of a dependent child as the court deems necessary and proper to ensure appropriate care, supervision, custody, conduct, maintenance, and support of the child (§ 362, subd. (d))." (*In re I.R.* (2021) 61 Cal.App.5th 510, 522.) The "juvenile court enjoys broad discretion in crafting a dispositional case plan to this end." (*Ibid.*) "The court's principal concern is a disposition consistent with the best interests of the minor." (*In re Rodger H.* (1991) 228 Cal.App.3d 1174, 1183.)

In advance of the disposition hearing, the Agency must submit a case plan, and the juvenile court must consider the plan "at the initial hearing and each review hearing." (§ 16501.1, subd. (g)(14).) "The case plan has several components, including: identifying the reasons for dependency (§ 16501.1, subd. (g)(3)); setting forth specific goals and describing why planned services are appropriate to meet those goals (§ 16501.1, subd. (g)(2)); and describing the services to be provided to assist in reunification (§ 16501.1, subd. (g)(10))." (*In re M.R.* (2020) 48 Cal.App.5th 412, 423.) The case plan is intended to ensure "that services are provided to the child and parents or other caretakers . . . in order to improve conditions in the parent's home, to facilitate the safe return of the child to a safe home or the permanent

8

placement of the child, and to address the needs of the child while in foster care." (§16501.1, subd. (a)(2).)

"We review the juvenile court's disposition case plan for an abuse of discretion." (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1071.) "A court exceeds the limits of legal discretion if its determination is arbitrary, capricious[,] or patently absurd. The appropriate test is whether the court exceeded the bounds of reason." (*In re L.W.* (2019) 32 Cal.App.5th 840, 851.) We note, however, there are some cases that have applied the substantial evidence standard of review to the juvenile court's dispositional orders, and others that have combined this standard with the abuse of discretion standard. (See *In re T.M.* (2016) 4 Cal.App.5th 1214, 1219.) Although we apply the abuse of discretion standard to our review of the court's dispositional orders in the instant case, under either standard our analysis and ultimate conclusion are the same.

### B.

As part of its disposition case plan, the juvenile court may require a parent to participate in a counseling or education program. (§ 362, subd. (d).) The program in which the parent is required to participate "shall be designed to eliminate those conditions" that led to dependency. (§ 362, subd. (d).) However, "the juvenile court is not limited to the content of the sustained petition" when it determines the dispositional orders that would best serve the children's interests. (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311 (*Briana V.*).) "In fact, there need not be a jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order." (*Ibid.*) Rather, the juvenile court should consider the "evidence as a whole" when crafting its dispositional orders. (*Ibid.*)

9

For example, in *Briana V.,* the juvenile court ordered the father, a registered sex offender, to participate in sexual abuse counseling even though "there was no evidence that the children came under the provisions of section 300, subdivision (d) (sexual abuse)." (*Briana V., supra,* 236 Cal.App.4th at p. 311.) The court of appeal affirmed the lower court's order, concluding that the father's status as a registered sex offender was one of the conditions that led to dependency. (*Id.* at pp. 311-312.) The record indicated the father was arrested for violating the terms of his probation, and the juvenile court was concerned that it was unaware of the programs the father was required to participate in as a registered sex offender. (*Ibid.*) The court of appeal therefore concluded the juvenile court's order requiring the father to attend sexual abuse counseling was not "beyond the bounds of reason." (*Id.* at p. 312.)

Similarly, in *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1005-1067 (*Christopher H.*), the juvenile court ordered the father to participate in drug and alcohol testing even though the court dismissed an allegation that the father's issues with alcohol affected his ability to care for and supervise his child. The court of appeal affirmed the lower court's order, pointing to evidence in the record that demonstrated the father struggled with substance abuse. (*Id.* at p. 1008.) In issuing its decision, the court commented, "when the [juvenile] court is aware of other deficiencies that impede the parent's ability to reunify with his child, the [juvenile] court may address them in the reunification plan. In this case, given appellant's repeated driving under the influence convictions and positive blood test for methamphetamine, the [juvenile] court would have been remiss if it failed to address appellant's substance abuse even though that problem had not yet affected his ability to care for Christopher." (*Ibid.*)

10

Here, Father argues that, contrary to the circumstances in *Briana V.* and *Christopher H.*, the evidence before the juvenile court did not prove he required the "sexual offender components of the case plan." Specifically, he contends the allegations of sexual abuse perpetrated against G.D.'s half-siblings, and Mother's suspicion of abuse perpetrated against G.D., were insufficient to support the juvenile court's order requiring Father to undergo sexual offender treatment. According to Father, the allegations of his abuse against G.D.'s half-siblings did not lead to the conditions causing G.D.'s dependency, and therefore the allegations could not serve as the basis for the order requiring sex offender treatment. We disagree.

Taken together, *Briana V.* and *Christopher H.* stand for the principle that the juvenile court is permitted to consider the "evidence as a whole" when crafting its dispositional orders. (*Briana V., supra,* 236 Cal.App.4th at p. 311; *Christopher H., supra,* 50 Cal.App.4th at p. 1007-1008.) Here, the Agency's reports were admitted into evidence without objection, and they included substantiated allegations that Father sexually abused multiple children. Due to these allegations, the Agency proffered that treatment was necessary, "to ensure [G.D.] is not at risk for sexual abuse."

Although Father emphasizes that the forensic interviews by G.D.'s half-siblings were not submitted into evidence, this does not mean the allegations of abuse, which were substantiated by the Department and summarized in the Agency's reports, were without evidentiary value. The rules of evidence are relaxed "with respect to the reports and social studies prepared by the caseworker assigned to the family. The reports and studies contain not only the observations and recommendations of the caseworker, but also hearsay statements from family members and other witnesses. Despite their hearsay content, such reports are admissible to assist the court

11

in its determinations." (*In re Lesly G.* (2008) 162 Cal.App.4th 904, 914.) Father had the due process right to present evidence and cross-examine witnesses within the Agency's reports at the jurisdiction and disposition hearing, but he declined to do so after the juvenile court presented him with such an opportunity. (See *id.* at p. 915.)

Moreover, in the Agency's reports, Mother expressed her suspicion that Father perpetrated abuse against G.D. She based her suspicion on G.D.'s apparent relief that Father was incarcerated, and Father's statement that G.D. attempted to "kiss him on his penis." Mother interpreted Father's recounting of G.D.'s behavior as an attempt to provide an explanation if she saw something of this nature occurring. Although Father argues that Mother's allegations of suspected abuse against G.D. were uncorroborated, we may not reassess the juvenile court's credibility findings on appeal. (*In re D.B.* (2018) 26 Cal.App.5th 320, 328.)

In summary, viewing this evidence as a whole, and subject to the limitations set forth below, we cannot conclude the juvenile court's orders requiring sexual abuse treatment exceeded the bounds of reason. Father was arrested and criminally charged based on allegations that he sexually abused G.D.'s half-siblings. He was unable to care for G.D. due to his arrest and the protective order that was later issued. Although the sexual abuse Father was alleged to have committed was not mentioned in the dependency petition, and the record does not reflect that he was convicted for the conduct in his criminal case, the juvenile court was within its discretion to issue dispositional orders addressing this issue. (*Christopher H., supra,* 50 Cal.App.4th at p. 1008.) However, as we discuss below, the juvenile court must limit its orders in a manner that affords Father the statutory immunity prescribed by section 355.1(f).

12

## C.

At a dependency proceeding under section 300, "testimony" by a parent or guardian "shall not be admissible as evidence in any other action or proceeding." (§ 355.1, subd. (f).)  Section 355.1(f) confers statutory use immunity to statements made by parents in dependency proceedings under certain limited circumstances.  (*In re Mark A.* (2007) 156 Cal.App.4th 1124, 1134-1135.)  The statute serves as a "promise to a parent that his or her testimony in juvenile dependency proceedings, as well as his or her statements made in therapy in furtherance of the reunification process, will not be used against the parent in a subsequent criminal prosecution." (*Id.* at p. 1142.)  Without such immunity, a parent may be forced to choose between incriminating themselves or "having little chance of complete reunification" with their child.  (*In re Jessica B.* (1989) 207 Cal.App.3d 504, 520 (*Jessica B.*).)

Testimony for these purposes is "limited to statements of the parent in court" (*Jessica B., supra,* 207 Cal.App.3d at p. 518), or statements made by the parent during court-ordered treatment or evaluations (*In re Lamonica H.* (1990) 220 Cal.App.3d 634, 650; *In re Joanna Y.* (1992) 8 Cal.App.4th 433, 441).  The statutory immunity afforded by section 355.1(f) does not, however, extend to statements made outside the parameters of in-court testimony or a court-ordered treatment or evaluations, even if the statements are made to a dependency investigator or social worker.  (*People v. Keo* (2019) 40 Cal.App.5th 169 (*Keo*).)

For example, in *Keo*, the defendant was arrested and charged for the murder of the mother of his two minor sons.  (*Keo, supra,* 40 Cal.App.5th at p. 173.)  The Los Angeles County Department of Children and Family Services filed juvenile dependency petitions pertaining to the defendant's

13

children.  (*Id.* at p. 176.)  A social worker and investigator for the department interviewed the defendant at the jail where he was detained.  (*Id.* at pp. 178-179.)  The defendant made incriminating statements that were admitted during his criminal trial, and he was convicted of second-degree murder. (*Ibid.*)

On appeal, among other constitutional objections, the defendant contended his statements to the social worker should have been excluded as privileged under section 355.1(f).  (*Keo, supra,* 40 Cal.App.5th at p. 179.)  The court of appeal disagreed.  Although the court was "troubled" by the prosecution's use of the defendant's statements during the criminal trial, the court concluded there was "no constitutional or statutory basis to expand immunity to protect all statements made by a parent to a social worker."  (*Id.* at p. 189.)  The court reasoned that the defendant could have declined to discuss any incriminating details in his interview with the social worker, and then freely discussed those details in-court at a dependency hearing pursuant to the statutory protections provided by section 355.1(f).  (*Id.* at p. 192.)  But because the defendant's statements were not made during court-ordered therapy, or in-court at a dependency hearing, they were not subject to statutory use immunity.  (*Ibid.*)

Here, the juvenile court adopted the Agency's case plan as part of its dispositional orders, including the "service objectives" that required Father to "show acceptance and support of the disclosure" made by G.D.'s half-siblings. Among other requirements, Father was expected to write apology letters to G.D.'s half-siblings, list consequences of his behavior, and list challenges that G.D.'s half-siblings now face as a result of the sexual abuse.  Neither the case plan nor the juvenile court's dispositional orders make clear that the statements Father is required to make are to be done during in-court

testimony at a dependency proceeding or during court-ordered treatment. Thus, the statements do not necessarily fall within the statutory immunity provided by section 355.1(f), and the juvenile court may not force Father to choose between incriminating himself or pursuing reunification. (*Jessica B., supra,* 207 Cal.App.3d at p. 521.) The matter must therefore be remanded so the juvenile court may revise its dispositional orders in a manner that affords Father the statutory immunity under section 355.1(f).

III.

The juvenile court's dispositional order requiring Father to comply with the "service objectives" component of the Agency's case plan (signed by the Agency social workers on November 21, 2023) is reversed. The matter is remanded for the juvenile court to issue further orders consistent with this opinion. In revising its orders, the juvenile court may not require Father to make statements regarding the conduct underlying his pending criminal matter outside the parameters of section 355.1, subdivision (f).

CASTILLO, J.

WE CONCUR:

HUFFMAN, Acting P. J.

IRION, J.

15